**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| OPUS EAST, L.L.C., *et al*, | ) | Case No. 09-12261  (MFW) |
| | ) | |
| Debtors. | ) | |
| _____ | ) | Jointly Administered |
| | ) | |
| JEOFFREY L. BURTCH, CHAPTER 7 | ) | |
| TRUSTEE FOR THE ESTATE OF OPUS | ) | |
| EAST, L.L.C. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 11-52423  (MFW) |
| | ) | |
| OPUS, L.L.C.; OPUS CORPORATION; | ) | |
| OPUS FOUNDATION; GERALD | ) | |
| RAUENHORST 1982 IRREVOCABLE | ) | |
| TRUST F/B/O GRANDCHILDREN; THE | ) | |
| GERALD RAUENHORST 1982 | ) | |
| IRREVOCABLE TRUST F/B/O | ) | |
| CHILDREN; KEITH P. BEDNAROWSKI | ) | |
| and LUZ CAMPA as Trustees | ) | |
| thereof and individually; OPUS | ) | |
| REAL ESTATE VII, L.P.; OPUS | ) | |
| REAL ESTATE VIII, L.P.; | ) | |
| MARK RAUENHORST, individually; | ) | |
| ADLER MANAGEMENT, LLC; | ) | |
| MARSHALL M. BURTON, | ) | |
| individually; OPUS PROPERTY | ) | |
| SERVICES, LLC; OPUS 2, L.L.C.; | ) | |
| OPUS ARCHITECTS & ENGINEERS, | ) | |
| P.C.; OPUS ARCHITECTS & | ) | |
| ENGINEERS, INC.; OPUS CORE, | ) | |
| L.L.C.; OPUS NORTHWEST, L.L.C.; | ) | |
| OPUS DESIGN BUILD, L.L.C.; | ) | |
| OPUS DEVELOPMENT CORPORATION; | ) | |
| OPUS HOLDING, L.L.C.; OPUS | ) | |
| HOLDING, INC.; OPUS AE GROUP, | ) | |
| INC. | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION [1]

Before the Court is the Defendants' Partial Motion to Dismiss the Amended Complaint filed by Jeoffrey L. Burtch (the "Trustee") of the estate of Opus East, L.L.C. (the "Debtor"). For the reasons set forth below, the Court will grant the Motion in part and deny the Motion in part.

I.   PROCEDURAL BACKGROUND

The Debtor filed a chapter 7 bankruptcy petition on June 1, 2009.  On June 30, 2011, the Trustee filed a Complaint against Opus Corp., Opus, L.L.C. and more than a dozen other individuals and entities (together the "Defendants") that included 47 counts. The Defendants filed a Partial Motion to Dismiss on August 18, 2011.  The Trustee then filed a motion for leave to amend his Complaint, which was not opposed.  The Court granted the Trustee's motion to amend on April 4, 2012.  The Amended Complaint added 13 additional counts.  The Defendants filed a Partial Motion to Dismiss the Amended Complaint on April 27, 2012.  The Motion seeks to dismiss Counts 1-17, 41-42, and 50-59. Counts 1 and 42, though present in the Original Complaint, were

---

[1]   The Court is not required to state findings of fact or conclusions of law when ruling on a motion under Rule 12.  Fed. R. Bankr. P. 7052(a)(3).  Accordingly, the Court herein makes no findings of fact or conclusions of law.

2

not included in the Defendants' first motion to dismiss.  This matter has been fully briefed and is ripe for decision.

II.  FACTUAL BACKGROUND[2]

The Debtor is a Delaware limited liability company that is part of a family of companies related to Opus Corp. – a Minnesota corporation involved in real estate development founded in 1953 by Gerald Rauenhorst.  In 1982, Gerald Rauenhorst created two trusts, one for his children and one for his grandchildren (together the "Trusts").  These Trusts hold all the interest in Opus Corp. and in Opus, L.L.C., a Minnesota limited liability company that is the sole member of the Debtor.

The Debtor and other entities like Opus West, Opus North, and Opus Northwest were created to act as regionally-based subsidiaries for Opus Corp. or Opus, L.L.C.  The Debtor alone at one point owned 17.3 million square feet of real estate in the Northeast United States consisting of twenty-five different projects.

From its inception, the Debtor was run by a board of directors and officers that included people already associated with other Opus entities or the Rauenhorst family.  These

---

[2]    The facts are as averred in the Amended Complaint, which must be presumed as true for the purposes of this Motion to Dismiss.  See Ascroft v. Iqbal, 556 U.S. 662, 678 (2009).

included Luz Campa ("Campa") and Keith Bednarowski
("Bednarowski") who serve as trustees for the Trusts, Marshall
Burton ("Burton") who was a long-time employee of the Debtor and
supporter of the Rauenhorst family, and Mark Rauenhorst
("Rauenhorst") who is a beneficiary of the children's trust and
CEO of Opus Corp. and Opus, L.L.C.

A.    Distribution Policy

According to the Trustee, the Debtor was never able to
thrive on its own.  It merely served as a means to distribute
capital to its parent Opus, L.L.C.  Until late 2005, the Debtor
was required to distribute 75% of its pre-tax income to its
parent.  (Am. Compl. ¶ 68.)  Because the Debtor experienced
financial problems in late 2005, Opus, L.L.C. relaxed the
distribution policy and required a distribution of only 35% of
pre-tax income plus any projected taxes.  (Id.)

As a result of the distribution policy, the Debtor was
continuously undercapitalized from the time of its founding in
1995.  (Id. at ¶ 71.)  Nonetheless, Opus, L.L.C. expected the
Debtor to continue to develop real estate.  (Id.)  Consequently,
the Debtor was often out of compliance with its loan covenants
because its debt-to-equity ratio was too high.  (Id. at ¶ 70.)
For example, a line of credit that was extended to the Debtor by

4

LaSalle Bank in October 2003 had to be amended nine times in three and a half years to avoid default.  (Id. at ¶ 75.)

The Debtor was also required to make "shared services" payments to Opus Corp. that totaled more than $12 million between July 2005 and June 2009.  (Id. at ¶ 78.)  The shared services payments included insurance premiums, business and franchise taxes, and fees for professional services.  (Id.)  However, when the Debtor's CFO requested more information about the shared services payments, Opus Corp. refused his request.  (Id. at ¶ 79.)

B.   Sale and Transfer of Assets

The Trustee also alleges that the Debtor transferred profitable assets to other Opus or Rauenhorst entities while the Debtor was left straddled with the loans.  One example is the NOAA project for the General Services Administration ("GSA").  A special purpose entity ("SPE") was created as a wholly-owned subsidiary of the Debtor for this project.  (Id. at ¶ 95.)  What was thought to be a lucrative project in 2005 became economically unfeasible for both the Debtor and GSA because of numerous delays.  (Id. at ¶ 96.)  The president of the Debtor at this time recommended to Rauenhorst that the project be abandoned.  (Id.) Rauenhorst disregarded the recommendation and construction proceeded.

5

The high costs of construction led to a dispute between the SPE and GSA which included a claim by the SPE for $50 million. (Id. at ¶ 97.)  Immediately before the Debtor filed its bankruptcy petition, Rauenhorst and Burton caused the SPE to be assigned to GAMD, L.L.C. for $100,000.[3]  (Am. Compl. at ¶ 98.) The assignment gave GAMD the right to the $50 million in claims asserted against GSA.

Assets were also assigned through what are known as "Presidents' Deals."  This allowed the presidents of companies like Opus Corp. and Opus, L.L.C. to take from subsidiaries, like the Debtor, projects of their choosing without compensation. (Id. at ¶ 103.)  Rauenhorst, Campa and Bednarowski often took what were thought to be the best projects.  (Id. at ¶ 104.)  The Debtor also sold several of its properties to Opus Real Estate VII, L.P. ("ORE VII") and Opus Real Estate VIII ("ORE VIII"), which were real estate investment funds created to hold assets for the Trusts and Gerald Rauenhorst.  (Id. at ¶¶ 54, 109.) These transactions were often overseen solely by Rauenhorst or Campa.  (Id. at ¶ 109.)  In summer 2009, Rauenhorst also ordered the funds in the Debtor's accounts to be transferred to other Opus entities.  (Id. at ¶ 114.)  Finally, immediately before the bankruptcy filing, Rauenhorst, as a director of the Debtor,

---

[3]    GAMD stands for Gerry and Mark (Rauenhorst) Development.

negotiated with the Debtor's creditors in a manner that
benefitted his own self interest and that of Opus, L.L.C. and
Opus Corp., but not the Debtor.


III.  <u>JURISDICTION</u>

     The Court has jurisdiction over this proceeding.  28 U.S.C.
§§ 1134 & 157(b)(2)(A), (E), (F), (H) & (O).


IV.  <u>DISCUSSION</u>

     The Defendants move to dismiss certain counts of the Amended
Complaint pursuant to Rule 12(b)(6) for failure to state a claim
upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); Fed.
R. Bankr. P. 7012.  There are six causes of actions involved in
the counts at issue: (1) piercing the corporate veil (Count 1),
(2) breach of fiduciary duty and aiding and abetting breach of
fiduciary duty (Counts 2-17, 50-51), (3) fraud (Counts 58-59),
(4) unjust enrichment (Counts 42, 52-55), (5) tortious
interference (Count 41), and (6) conversion (Counts 56-57).

     The Defendants' contentions are that (1) the Trustee does
not plead all the elements of a piercing the corporate veil
count; (2) the Opus East, L.L.C. Agreement (the "LLC Agreement")
limits the fiduciary duties of its members, directors and
officers to acting in good faith and the Trustee does not plead

7

lack of good faith; (3) the Trustee fails to plead fraud with particularity as required by Rule 9(b); (4) the unjust enrichment claims are not proper because the alleged wrongdoing is based on a contract; (5) the Trustee lacks standing to bring an action for tortious interference and conversion as a direct claim and has failed to plead it as a derivative claim with particularity as required by Rule 23.1(b).  The Trustee opposes the Motion and alternatively requests leave to amend any count which the Court dismisses.

    A.   <u>Standard of Review</u>

For the Trustee to survive a Rule 12(b)(6) motion, his claims must meet the standards of pleading.  The Supreme Court's decisions in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) have shifted federal pleading standards from notice pleading to a heightened standard of pleading.  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009).  This heightened pleading requirement applies to all civil suits in federal courts.  <u>Id.</u>

To survive a motion to dismiss under the new pleading standard, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Iqbal</u>, 556 U.S. at 678.  A claim is facially plausible "when the plaintiff pleads factual content that allows

8

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "[A] pleading offering only labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Fowler, 578 F.3d at 210. "Courts have an obligation in matters before them to view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable." Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 184 (3d Cir. 2000). A court must "draw on the allegations of the complaint, but in a realistic, rather than a slavish, manner." Id.

Determining whether a complaint is "facially plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not shown — that the pleader is entitled to relief." Id.

The Third Circuit has instructed courts to conduct a two-part analysis. Fowler, 578 F.3d at 210. "First the factual and legal elements of a claim should be separated," with the reviewing court accepting "all of the complaint's well-pleaded facts as true, but . . . disregard[ing] any legal conclusions."

9

Id. at 210–11.  Next, the reviewing court must "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief."  Id.

   B.   Piercing the Corporate Veil (Count 1)

   The Defendants seek to dismiss the Trustee's piercing the corporate veil count - that alleges that the Debtor is merely an alter-ego of Opus, L.L.C. and/or Opus Corp. - for failure to plead with the sufficiency now required by Iqbal.  In response, the Trustee argues that the Defendants are precluded from seeking dismissal of this claim under Rule 12(g) because it was not included in the Defendants' original motion to dismiss.  In reply, the Defendants argue that Rule 12(h) creates an exception, which permits them to add this count to their new motion.

        1.   Rule 12(g)

   Rule 12(g)(2) states that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to a party but omitted from its earlier motion."  Fed R. Civ. P. 12(g)(2).  This limitation applies even when a complaint has been amended because, while the prior complaint is left with no legal effect, "the amended complaint does not automatically revive all the defenses and objections the defendant may have waived in a motion to dismiss .

10

. . ."  <u>Sears Petroleum & Transp. Corp. v. Ice Ban Am., Inc.</u>, 217
F.R.D. 305, 307 (N.D.N.Y. 2003).  The defendant is permitted to
bring a new 12(b) motion only on new allegations alleged in the
amended complaint.  <u>Morrison v. Amway Corp. (In re Morrison)</u>, 421
B.R. 381, 386 (Bankr. S.D. Tex. 2009).

Rule 12(h)(2) is an exception to Rule 12(g)(2) and provides
that a motion under 12(b)(6) may be raised "(A) in any pleading
[such as an answer] allowed or ordered under Rule 7(a); (B) by
motion [for judgment on the pleadings] under Rule 12(c); or (C)
at trial."  Fed. R. Civ. P. 12(h)(2).  A strict interpretation of
these rules instructs that a party cannot file successive
12(b)(6) motions even after an amended complaint is filed if it
could have been raised in the prior 12(b)(6) motion unless the
12(b)(6) argument is in an answer, after pleadings are closed, or
at trial.  <u>Stoffels v. SBC Commc'n, Inc.</u>, 430 F. Supp. 2d 642,
647 (W.D. Tex. 2006).  <u>See also</u> <u>Tatum v. R.J. Reynolds Tobacco
Co.</u>, No. 1:02CV00373, 2007 WL 1612580, at *6 (M.D.N.C. May 31,
2007) ("Taken together, Rules 12(g) and 12(h)(2) prohibit
Defendants from filing a successive 12(b)(6) motion unless it is
included in their answer or in a Rule 12(c) motion after the
pleadings are closed.").

Many courts, however, believe that taking such a hyper-
technical approach does not make sense.  They have permitted

11

successive motions to dismiss to avoid unnecessary delays.  See, e.g., Tatum, 2007 WL 1612580, at *6;  Stoffels, 430 F. Supp 2d at 649; Hayes v. Invigorate Int'l, Inc., No Civ. A.04-1577, 2004 WL 2203732, at *3 (E.D. Pa. Sept. 24, 2004); In re Westinghouse Sec. Litig., No. Civ. A. 91-354, 1998 WL 119554, at *6 (W.D. Pa. Mar. 12, 1998).  These courts' "more permissive approach seems sound and within the spirit, if the not the letter of [Rules 12(g) and 12(h)(2)]."  Tatum, 2007 WL 1612580, at *6 (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1392 (3d ed. 2004)).

The Court agrees with the more permissive approach to Rules 12(g) and 12(h)(2).  In this case, a hyper-technical interpretation of the rules resulting in disallowance of the Defendants' 12(b)(6) motion on Count 1 would almost assuredly add time and delay because the Defendants will most likely raise the argument later.  If the Court is able to hear the argument later, there is no reason why it should not hear it now, together with the Defendants' other dismissal arguments.  Therefore, the Court will consider the Defendants' motion to dismiss Count 1.

2.  Sufficiency of the Pleadings

"Delaware law permits a court to pierce the corporate veil of a company 'where there is fraud or where [it] is in fact a mere instrumentality or alter ego of its owner.'"  Official

12

Unsecured Creditors' Comm. of Broadstripe LLC v. Highland Capital Mgmt., L.P. (In re Broadstripe, LLC), 444 B.R. 51, 102 (Bankr D. Del 2010) (quoting Geyer v. Ingersoll Publ'ns Co., 621 A.2d 784, 793 (Del. Ch. 1992)).  See also Pearson v. Component Tech. Corp., 247 F.3d 471, 484-85 (3d Cir. 2001).  Thus, "in order to state a claim for piercing the corporate veil under the alter ego theory, [a party] must show (1) that the corporation and its shareholders operated as a single economic entity, and (2) that an overall element of injustice or unfairness is present."  Trevino v. Merscorp, Inc., 583 F. Supp. 2d 521, 528 (D. Del. 2008).

"The alter ego theory [only] comes into play in piercing the corporate veil when one seeks to hold liable an individual owner who controls the [company]."  Eastern Minerals & Chems. Co. v. Mahan, 225 F.3d 330, 333 n. 7 (3d Cir. 2000) (emphasis added). Because Opus Corp. does not have any controlling interest in the Debtor,[4] the Court finds that the Trustee has failed to state a cause of action to pierce the corporate veil between the Debtor and Opus Corp.

The Trustee also seeks to pierce the corporate veil between the Debtor and Opus, L.L.C.  To determine whether two entities are in fact a "single economic entity" under the alter-ego

---

[4]    Opus, L.L.C. is the only member of the Debtor.  In Delaware, a member of a limited liability company is the equivalent of a shareholder of a corporation.  See 6 Del. C. § 18-302.

theory, the following factors must be sufficiently pled by the
plaintiff:

> (1) undercapitalization;
> (2) failure to observe corporate formalities;
> (3) nonpayment of dividends;
> (4) the insolvency of the debtor corporation at the
> time;
> (5) siphoning the corporation's funds by the dominant
> stockholder;
> (6) absence of corporate records; and
> (7) the fact that the corporation is merely a
> facade for the operations of the dominant
> stockholder or stockholders.

Trevino, 583 F. Supp. 2d at 528-29; United States v. Pisani, 646
F.2d 83, 88 (3d Cir. 1981).  "'While no single factor justifies a
decision to disregard the corporate entity,' some combination of
the above is required, and 'an overall element of injustice or
unfairness must always be present' as well."  Trevino, 583 F.
Supp. 2d at 529 (quoting United States v. Golden Acres, Inc., 702
F. Supp. 1097, 1104 (D. Del. 1988).

In Count 1, the Trustee alleges that Opus, L.L.C. "ignored
the corporate fiction to favor their own interests over the
interest of Opus East."  (Am. Compl. at ¶ 128.)  This allegation
more directly addresses a breach of the duty of loyalty rather
than alter-ego theory.  Yet, the complaint also incorporates the
following factual allegations:

> Opus, L.L.C. required the payment of dividends by the
> Debtor from the time of its formation that left it
> consistently undercapitalized.  (Id. at ¶¶ 69-71.)

14

There existed no corporate formalities between Opus,
L.L.C., Opus Corp., and the Trusts as evidenced by the fact
that "Opus Corp.'s legal and accounting departments
frequently provided services for the Trusts and Rauenhorst
family members." (Id. at ¶ 48.)
    The Secretary of the Debtor was directed by Rauenhorst
to keep "bare-bones" minutes and not included in executive
sessions so there would be no minutes. (Id. at ¶ 51.)

The Court finds that these allegations are insufficient to

support a claim that the veil should be pierced between the

Debtor and Opus, L.L.C.  The allegation of lack of corporate

formalities relates to Opus Corp. and Opus, L.L.C., not the

Debtor.  Also, simply because the Secretary was told to keep

"bare-bones" minutes does not create a facially plausible

allegation that would allow "the court to infer more than a mere

possibility of misconduct" that the Debtor lacked proper

corporate records.  Iqbal, 556 U.S. at 679.  See also Trevino,

583 F. Supp. 2d at 528-29.

The Trustee's only facially plausible allegation is that the

dividend payments that were paid by the Debtor to Opus, L.L.C.

left the Debtor undercapitalized.  However, this single

allegation only addresses one element of the single economic

entity test and is not, on its own, enough.  Trevino, 583 F.

Supp. 2d at 529.

Because the Trustee has not alleged sufficient facts to

support the existence of a single economic entity, the Court

15

concludes that the Trustee has failed to state a cause of action on Count 1 and will, therefore, grant the Defendants' motion to dismiss that count.  The Court will, however, grant the Trustee leave to amend.

C.   Breach of Fiduciary Duty (Counts 2-17, 50-51)

The Defendants seek to dismiss nine counts for breach of fiduciary duty against three Defendants (Rauenhorst, Campa, and Burton) and nine counts for aiding and abetting their breach of fiduciary duty.  The Defendants rely on the LLC Agreement which contains a clause exculpating the Defendants for any breach of fiduciary duty of care and/or loyalty.  As a result, the only remaining duty owed by the Defendants is to act in good faith – a standard they contend the Trustee has failed to plead sufficiently.

The Trustee responds that the exculpatory clause contained in the LLC Agreement is an affirmative defense and not a basis for a motion to dismiss.  See Stanziale v. Nachtomi (In re Tower Air), 416 F.3d 229, 242 (3d Cir. 2005).

The Defendants disagree and assert that the exculpatory clause of the LLC Agreement is not an affirmative defense.  They contend that an LLC agreement differs from a corporate charter in terms of fiduciary duties.  According to the Defendants, the fiduciary duties owed under a corporate charter derive from

16

common law while the fiduciary duties owed under an LLC agreement derive from the contract itself.  Fisk Ventures, LLC v. Segal, No. 3017-CC, 2008 WL 1961156, at *8 (Del. Ch. May 7, 2008).

The Court is not persuaded by the Defendants' argument.  An exculpatory clause found in an LLC agreement "is functionally akin to an exculpatory charter provision authorized [under Delaware corporate law]."  Auriga Capital Corp. v. Gatz Props., 40 A.3d 839, 859 (Del. Ch. 2012).  In other words, an exculpatory clause of an LLC agreement functions just as a corporate charter to limit common law fiduciary duties.  Because the duties owed by fiduciaries are the same whether it be a corporation or limited liability company, the fiduciary duties the Defendants owe the Debtor are derived from common law and not dependent on the LLC Agreement.

Further, an exculpatory clause is considered an affirmative defense.  Ad hoc Comm. of Equity Holders of Tectonic Network, Inc. v. Wolford, 554 F. Supp. 2d 538, 561 (D. Del. 2008). Affirmative defenses are raised in a defendant's answer and "generally will not form the basis for dismissal under Rule 12(b)(6)."  In re Tower Air, 416 F.3d at 242 (recognizing in dictum that an exculpation provision is an affirmative defense). See also Tectonic Network, Inc., 554 F. Supp. 2d at 561 (holding that an exculpation provision was an affirmative defense and

17

denying defendant's motion to dismiss duty of care claims on that basis); Mervyn's LLC v. Lubert-Adler Group IV, LLC (In re Mervyn's Holdings, LLC), 426 B.R. 488, 502 (Bankr. D. Del. 2010) (agreeing with other courts that an exculpation clause is an affirmative defense not to be raised as part of a motion to dismiss); Miller v. McCown De Leeuw & Co., Inc. (In re The Brown Schools), 368 B.R. 394, 401 (Bankr. D. Del. 2007) ("The exculpation clause is an affirmative defense and the determination of the viability of that defense is not proper [in a motion to dismiss]."). Because the Defendants' only argument to dismiss the counts for breach of fiduciary duty and aiding and abetting breach of fiduciary duty is the exculpation clause, the Court will deny the motion to dismiss Counts 2-17 and 50-51.

D.   Fraud (Counts 58 and 59)

The Defendants seek to dismiss two counts for fraud and conspiracy to commit fraud alleged by the Trustee against seven Defendants (Rauenhorst, Opus, L.L.C., Opus Corp, Children's Trust, Grandchildren's Trust, Campa, and Bednarowski). The Defendants assert in their motion that the Trustee failed to meet the heightened pleading standard required by Rule 9(b). See Fed. R. Civ. P. 9(b); Fed. R. Bankr. P. 7009. In response, the Trustee contends that the counts are properly pled.

18

Where a party asserts a claim for fraud, the complaint must set forth facts with sufficient particularity to apprise the defendant of the charges against him so that he may prepare an adequate answer.  Global Link Liquidating Trust v. Avantel, S.A. (In re Global Link Telecom Corp.), 327 B.R. 711, 718 (Bankr. D. Del. 2005).  To provide fair notice, the complainant must go beyond merely parroting statutory language.  Id.  See also Burtch v. Dent (In re Circle Y of Yoakum, Texas), 354 B.R. 349, 356 (Bankr. D. Del. 2006).

To state a fraud claim under Delaware law, it is necessary to plead:

> (1) a specific false representation [or omission] of
> material fact;
> (2) knowledge by the person who made it of its falsity;
> (3) ignorance of its falsity by the person to whom it
> was made;
> (4) the intention that it should be acted upon; and
> (5) the plaintiff acted upon it to his damage.

Nortel Networks, Inc. v. Commc'ns Test Design, Inc. (In re Nortel Networks, Inc.), No. 09-10138 (KG), 2011 WL 1100983, at *7 (Bankr. D. Del. Mar. 22, 2011) (citing Brinkmeier v. BIC Corp., 733 F. Supp. 2d 552, 559 (D. Del. 2010)).

> Although date place and time allegations may
> fulfill the requirement of pleading with
> particularity, these types of allegations are
> not required to satisfy Rule 9(b), so long as
> the circumstances of the alleged fraud are
> pled sufficiently 'to place the defendants on
> notice of the precise misconduct with which

19

> they are charged, and to safeguard defendants
> against spurious charges of immoral and
> fraudulent behavior.'

Id. at *8 (quoting Seville Indus. Mach. Corp. v. Southmost Mach.
Corp., 742 F.2d 786, 791 (3d Cir. 1984)).  The Third Circuit has,
however, required "at a minimum, that the plaintiff identify the
speaker of allegedly fraudulent statements."  Klein v. General
Nutrition Cos., Inc., 186 F.3d 338, 345 (3d Cir. 1999).

Further, "the normally rigorous particularity rule [9(b)]
has been relaxed somewhat where the factual information is
peculiarly within the defendant's knowledge or control."  In re
Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir.
1997).  A bankruptcy trustee, as a third party outsider to the
debtor's transactions, is generally afforded greater liberality
under the more relaxed standard.  Global Link Telecom Corp., 327
B.R. at 717.  Yet, even then, "boilerplate and conclusory
allegations will not suffice.  Plaintiffs must accompany their
legal theory with factual allegations that make their
theoretically viable claim plausible."  Burlington Coat Factory,
114 F.3d at 1418 (internal citations omitted).

Here, in his allegation of fraud and conspiracy to commit
fraud, the Trustee relies on only one statement made by an
unnamed party that the Debtor's parent entities would "be there"

20

for it financially.  (Am. Compl. at ¶ 536.)  According to the
Trustee, the Debtor relied on this one statement in all of its
actions going forward.  The Trustee contends that had it not been
for this one statement the Debtor would have taken different
actions and been in a better position to protect itself
financially.

The Court is unable to find that the Trustee's allegation
was pled with the particularity necessary to make his theoretical
claim plausible under the standard set forth in Rule 9(b).  The
Trustee fails to allege who made the statement, where and when
the statement was made, or provide the context in which the
statement was made.  Even under the more relaxed pleading
standard afforded to trustees, with only the information
provided, the Defendants do not have sufficient notice to allow
them to prepare an adequate answer in defense.  The Court,
therefore, concludes that the Trustee has failed to state a cause
of action on Counts 58 and 59 for fraud and conspiracy to commit
fraud, and the Court will grant the Defendants' motion to dismiss
those counts, with leave to amend the Complaint.

E.    Unjust Enrichment (Counts 42[5], 52-55)

---

[5]    Count 42, like Count 1, was not included in the Defendants'
original Motion to Dismiss though it was part of the original
Complaint.  However, for the same reasons discussed above, the
Court will permit the Defendants to include Count 42 as part of
this Motion.

The Defendants seek to dismiss five counts of unjust
enrichment alleged by the Trustee against ten Defendants
(Children's Trust, Grandchildren's Trust, Rauenhorst, Campa,
Bednarowski, Opus Corp, Opus Northwest, Opus, L.L.C., ORE VII,
and ORE VIII).

In Delaware, "[u]njust enrichment is 'the unjust retention
of a benefit to the loss of another, or the retention of money or
property of another against the fundamental principles of justice
or equity and good conscience.'"  <u>Nemec v. Shrader</u>, 991 A.2d
1120, 1130 (Del. 2010) (quoting <u>Fleer Corp. v. Topps Chewing Gum,</u>
<u>Inc.</u>, 539 A.2d 1060, 1062 "(Del. 1988))."  The elements of unjust
enrichment include:

> (1) an enrichment;
> (2) an impoverishment;
> (3) a relation between the enrichment and
> impoverishment;
> (4) the absence of justification; and
> (5) the absence of a remedy provided by law.

<u>Id.</u>

There is a threshold issue in determining whether a claim
for unjust enrichment is valid.  If there is a contract that
governs the relationship of the parties, only the contract may
provide the rights available, and a claim for unjust enrichment
should be denied.  <u>BAE Sys. Info. And Elec. Sys. Integration,</u>

Inc. v. Lockheed Martin Corp., C.A. No. 3099-VCN, 2009 WL 264088, at *7 (Del. Ch. Feb. 3, 2009).

      1.   Counts 52-55

     The Defendants' sole argument, as to Counts 52-55, is that the claims are based on the same fiduciary duty claims the Trustee alleged earlier in the Complaint and therefore are contract claims precluding a claim for unjust enrichment.  The Court agrees with the Defendants that the unjust enrichment claims under Counts 52-55 are based on the same fiduciary duty claims discussed earlier.  However, as the Court concluded above, the fiduciary duties owed under the LLC Agreement are the same common law duties owed under a corporate charter.  See Auriga Capital Corp., 40 A.3d at 850.  The duties owed may be modified or eliminated by an LLC agreement, but they are not created by it.  See William Penn P'ship v. Saliba, 13 A.3d 749, 756 (Del. 2011) ("managers of a Delaware limited liability company owe traditional fiduciary duties of loyalty and care to the members of the LLC, unless the parties expressly modify or eliminate those duties in the operating agreement").  Therefore, the Court concludes that the Trustee's claims are not based on the parties' contract.  Consequently, the Court will deny the Defendants' motion to dismiss Counts 52-55 for unjust enrichment.

23

2.   Count 42

Both the Defendants and the Trustee agree that Count 42 is not based on fiduciary duties owed by the Defendants.  Rather, Count 42 is based on payments made by the Debtor to satisfy its portion of tax obligations.  The Trustee alleges that the Debtor overpaid, thereby unjustly enriching the Trusts.

The Defendants argue that the Debtor is a disregarded entity that consolidates its tax returns with its parent Opus, L.L.C., which is a pass-through entity that passes all its gains and losses to the Trusts.  Accordingly, the Defendants contend that any overpayment collected by the Trusts is not unjust.

The Defendants cite no law, case, or section of the LLC Agreement to support their argument.  Taking the allegations of the Amended Complaint as true, the Court concludes that the Trusts were enriched by retaining the overpayment and the Debtor was impoverished.  If the retention of the overpayment was improper as the Trustee claims, the Amended Complaint adequately pleads a claim for unjust enrichment.  Consequently, the Court will deny the Defendants' motion to dismiss Count 42.

F.   Tortious Interference and Conversion (Counts 41, 56-57)

Finally, the Defendants seek to dismiss one count for tortious interference alleged by the Trustee against three Defendants (Children's Trust, Grandchildren's Trust, and Opus

24

Corp.) and two counts for conversion and conspiracy to commit conversion against three Defendants (Rauenhorst, Opus, L.L.C., and Opus Northwest). The Defendants argue that the Trustee lacks standing to bring a direct claim and failed to plead a derivative claim with particularity. The Trustee disagrees.

    1.  <u>Standing</u>

"Standing is 'the threshold question in every federal case.'" <u>Paul White, Gatesheath Trustees Ltd. v. Whittle (In re Whittle)</u>, 449 B.R. 427, 429 (Bankr. M.D. Fla. 2011) (quoting <u>Maverick Media Grp., Inc. v. Hillsborough Cnty., Fla.</u>, 528 F.3d 817, 819 "(11th Cir. 2008))." It is the "constitutional minimum" established by the Supreme Court to determine whether there is a proper "case or controversy" that may be heard by the federal court. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992).

The Defendants argue that the Debtor's estate does not have standing to bring a direct claim against these Defendants because the allegations involve Opus East Management, L.L.C. ("OEM"), a wholly-owned subsidiary of the Debtor, and not the Debtor itself.

The Court agrees with the Defendants that the Trustee has no standing to bring a direct claim. "A shareholder has no personal or individual right of action against a third party for acts causing injury to a corporation." <u>Continental Grp., Inc. v. Justice</u>, 536 F. Supp. 658, 660 (D. Del. 1982). The Delaware

Legislature clearly intended to extend this maxim to limited liability companies.  See 6 Del. C. § 18-701 ("A limited liability company interest is personal property.  A member has no interest in specific limited liability company property.").  As sole member of OEM, the Debtor does not have any interest in OEM's property including any cause of action alleging that OEM suffered an injury.  Therefore, the Court concludes that the Trustee lacks standing to bring a direct cause of action for tortious interference with, or conversion of, OEM's property.

          2.    Derivative Action

     The Trustee argues, however, that he may bring a derivative action on behalf of OEM.  "In a derivative suit, a shareholder sues on behalf of a corporation to enforce a corporate cause of action against officers, directors, or third parties."  In re Nutrisystem, Inc. Derivative Litig., 666 F. Supp. 2d 501, 510 (E.D. Pa. 2009).  The Delaware Legislature has also allowed derivative suits to be brought by members on behalf of limited liability companies.  See 6 Del. C. §§ 18-1001 – 18-1004.  As a result, "case law governing corporate derivative suits is equally applicable to suits on behalf of an LLC."  VGS, Inc. v. Castiel, No. C.A. 17995, 2003 WL 723285, at *11 (Del. Ch. Mar. 10, 2003).  Because the Debtor is the sole member of OEM, the Trustee would be able to bring a derivative action on behalf of OEM.

26

The Defendants argue, nonetheless, that the Trustee has not met the specific pleading requirements under Rule 23.1 to bring a derivative action in this Court.  See Fed. R. Civ. P. 23.1, Fed. R. Bankr. P. 7023.1.  Under Rule 23.1(b), the plaintiff "must . . . (3) state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort."  Fed. R. Civ. P. 23.1(b).  In other words, the member is required to plead that a demand was made upon the board of directors to bring a direct cause of action or, if no demand was made, the reason why there was no demand.

Nowhere in the pleadings does the Trustee describe making a demand on OEM to bring a cause of action or explain any reason why he did not.  The Trustee asserts in his response to the Defendants' motion that the registration of OEM was cancelled so it no longer exists and that a demand upon it would have been futile.  The Trustee failed to plead this in his Complaint, however.  The Third Circuit requires that "a plaintiff is obliged to plead, with particularity, facts that establish demand futility."  Kanter v. Barella, 489 F.3d 170, 176 (3d Cir. 2007) (emphasis added).  Because the Trustee did not properly plead the derivative action, he has failed to state a cause of action.  The

27

Court will, therefore, dismiss Counts 41 and 56-57.  The Court
will, however, grant Trustee leave to amend these counts.


V.    <u>CONCLUSION</u>

        For the foregoing reasons, the Court will grant the
Defendants' Motion to Dismiss Counts 1, 41, and 56-59 with leave
to amend.  The Court will deny the Motion to Dismiss Counts 2-17,
42 and 50-55.

        An appropriate Order is attached.


Dated:  October 12, 2012            BY THE COURT:


                                    Mary F. Walrath
                                    United States Bankruptcy Judge

28