## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | § | Chapter 7 |
| | § | |
| OPUS EAST, L.L.C., *et al.* | § | Case No. 09-12261 (MFW) |
| | § | |
| Debtor(s) | § | Jointly Administered |

| | | |
|---|---|---|
| | § | |
| JEOFFREY L. BURTCH, CHAPTER 7 | § | |
| TRUSTEE FOR THE ESTATE OF OPUS | § | |
| EAST, L.L.C., | § | Adv. Proc. No. 11-52423 (MFW) |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | |
| OPUS, LLC, a Minnesota limited liability | § | **OPPOSITION TO PLAINTIFF'S** |
| company; OPUS CORPORATION, a Minnesota | § | **SECOND MOTION TO AMEND** |
| corporation; OPUS FOUNDATION; GERALD | § | **COMPLAINT** |
| RAUENHORST 1982 IRREVOCABLE TRUST | § | |
| F/B/O GRANDCHILDREN AND THE | § | |
| GERALD RAUENHORST 1982 | § | |
| IRREVOCABLE TRUST F/B/O CHILDREN, | § | |
| KEITH P. BEDNAROWSKI and LUZ CAMPA, | § | |
| as Trustees thereof; OPUS REAL ESTATE VII, | § | |
| L.P.; OPUS REAL ESTATE VIII, L.P.; MARK | § | |
| RAUENHORST, individually; KEITH P. | § | |
| BEDNAROWSKI, individually, LUZ CAMPA, | § | |
| individually, ADLER MANAGEMENT, LLC; | § | |
| MARSHALL M. BURTON, individually; OPUS | § | |
| PROPERTY SERVICES, LLC; OPUS 2, L.L.C.; | § | |
| OPUS ARCHITECTS & ENGINEERS, P.C.; | § | |
| OPUS ARCHITECTS & ENGINEERS, INC.; | § | |
| OPUS CORE, L.L.C.; OPUS NORTHWEST, | § | |
| L.L.C.; OPUS DESIGN BUILD, L.L.C.; OPUS | § | |
| DEVELOPMENT CORPORATION; OPUS | § | |
| HOLDING, L.L.C.; OPUS HOLDING, INC.; | § | |
| OPUS AE GROUP, INC. | § | |

Defendants

The Trustee's motion to amend the complaint yet again should be denied. Nearly four

years after Opus East, LLC, filed for bankruptcy, and nearly two years after the statute of

limitations for avoidance actions expired, the Trustee asks this Court to allow him to add seven

new avoidance counts and two new defendants – OUS TFC, LLC, and Opus Financial, LLC.

The factual basis for the new counts and new defendants is two transfers to OUS TFC that

occurred in 2008 (the "Transfers"). Neither the Transfers nor OUS TFC, is mentioned in the

initial complaint. Contrary to the Trustee's claims, new allegations about transfers to new

defendants do not "relate back" to the initial complaint. Nor does equitable tolling apply because

the Trustee had complete, accurate, and detailed financial records reflecting the Transfers for

nearly four years, and no one did anything to conceal the Transfers. Because the claims are

barred by the statute of limitations, the proposed amendment is futile.  Moreover, the Trustee

cannot show the required good cause to change the Scheduling Order more than a year after the

applicable deadline.

## FACTS

Opus East declared bankruptcy on July 1, 2009.  (Second Am. Compl., D.I. 115 at ¶ 1.)

Plaintiff Jeoffrey L. Burtch ("Trustee") was appointed as interim trustee the following day.  (*Id.*

at ¶ 13.)  The Trustee commenced this action by filing a complaint on June 30, 2011 – one day

before the two-year statute of limitations for preferences and fraudulent transfers expired under

11 U.S.C. § 546(a)(1)(A). (Compl., D.I. 1.) That complaint, the only pleading filed within the

statute of limitations, does not mention the Transfers. (*Id.*)

I.     Opus East's Books and Records Describe The Transfers But The Trustee Did Not
       Mention the Transfers in His Initial Complaint.

Opus East's books and records, including its general ledger, reflect that Opus East  made

loan payments to OUS TFC of $13.5 million in July 2008 and $20 million in September 2008.

(Ex. B: General Ledger Report From Plaintiff's Production Showing Transfers.) Evidence of the

Transfers also appears in documents that Defendants produced to the Trustee. (*See* Pl.'s Second

Mot. to Am., D.I. 129 at ¶ 4 ("Plaintiff's review of Defendants' document production revealed references to the transfers at issue.")) The Trustee has had complete access to Opus East's books and records since his appointment in July 2009. (*See* Ex. C, Excerpts from the Deposition of Johanna Bolin on February 13, 2013 ("Bolin Dep.") at 14:24 – 15:6.)

The Trustee did not mention any transfers to OUS TFC or name OUS TFC, or Opus Financial, in his initial complaint filed on June 30, 2011. (Compl., D.I. 1.) The Trustee admits that OUS TFC, LLC, and Opus Financial, LLC, are entities owned by the Trusts; that is, they are legal entities separate from the Defendants. (Pl.'s Second Mot. to Am. Compl., D.I. 129 at ¶¶ 41, 44 (acknowledging the entities are new defendants.)) OUS TFC and Opus Financial therefore have different creditors from the Defendants. Contrary to the Trustee's assertions, Defendants' counsel do not represent either Opus Financial or OUS TFC. (Ex. A, Affidavit of W.T. Roberts, dated Mar. 20, 2013 ("Roberts Aff."))

II.    Defendants Were Not Responsible for the SoFA and Did Not Hide the Transfers.

Neither Defendants, nor anyone else, hid the Transfers from the Trustee. Opus East filed its 77-page Statement of Financial Affairs ("SoFA") on July 1, 2009. (D.I. 2.) Schedule 3C of the SoFA was intended to disclose transfers to insiders within one year of the filing. (*Id.*) That schedule shows $1.2 million in interest payments by Opus East to OUS TCF in 2008, but does not include the $13.5 and $20 million principal payments made the same year. (*Id.*)

Opus East, not any Defendant, was responsible for the SoFA. Johanna Bolin, Opus East's Chief Financial Officer, helped prepare the schedules. (Bolin Dep. at 14:23-15:6.) Bolin is not a defendant. She worked as a consultant for the Trustee for three months after Opus East filed for bankruptcy in 2009. (*Id.* at 14:3-25.) As the Trustee's paid consultant, Bolin "[a]nswered any and all questions that the trustee may have had." (*Id.* at 14:24-15:6.) She "[t]ried

to direct the trustee to the right people if [she] did not know the answers" and she"[p]rovided any schedules or information that the trustee requested." (*Id.*) Bolin also trained "the trustee on how to use the accounting software since the trustee was given access as a log-in to – the software." (*Id.*)

Bolin and her team are the ones who created the SoFA and its schedules. (*See id.* at 343:3-5.) The Trustee wrongly states, "Defendants controlled the contents of the Debtor's books and records and assisted in assimilating information for the Debtor's schedules and [SoFA]" (Pl.'s Second Mot. to Am. Compl., D.I. 129 at ¶ 48.)   In fact, Bolin corrected Trustee's counsel when he suggested that during her deposition:

> Q    Okay.  And again, those -- that SOFA and
> those charts and transfers, those -- those were made
> from the software housed in Minneapolis and with
> reports that you exported and created with the help of
> a Corporate employee; correct?
>
> A    That the Corporate employee trained us on
> how to run the reports and then we ran the reports and
> exported them and sorted them --
>
> Q    Okay.
>
> A    -- ourselves.

(*Id.* at 342:23 – 343:7.)  None of the ten witnesses deposed by the Trustee, and none of the documents exchanged, suggest that any Defendant either dictated what should be included in the SoFA or otherwise concealed the Transfers.  The SoFA was signed by Brian Grindall, Vice President of Opus East, and not by any Defendant. (*See id.*)

III.    The Trustee Did Not Just Learn About the Transfers.

The Trustee does not state when he first learned about the Transfers.   His suggestion that he was only able to "confirm" the Transfers at Bolin's Deposition last month is false. (See Pl.

Second Mot. to Am. Compl. at ¶ 4.) The Trustee described the $20 Million Transfer to OUS TFC in the Second Amended Complaint, filed on November 9, 2012. (Second Am. Compl., D.I. 115 at ¶ 185.) That complaint was itself filed nearly a year and a half after the statute of limitations expired. The Trustee chose not to assert any claims based on the Transfers in the Second Amended Complaint, or name OUS TFC or Opus Financial. (*Id.*)

**ARGUMENT**

I.      **The Statute of Limitations Has Expired.**

An avoidance action may not be commenced after the later of: (A) two years after entry of the order for relief; or (B) one year after the appointment or election of the first trustee. 11 U.S.C. § 546. Nothing gives a trustee the right to do what the Trustee seeks to do here – bring new avoidance actions against new defendants nearly four years after the Petition Date and his appointment as Trustee. The statute of limitations expired two years ago: July 1, 2011.

> a.  *Claims against two new defendants nearly two years after the statute of limitations expired do not "relate back."*

"[L]eave to amend shall not be given where an amendment will be futile and 'an amendment would be futile if a plaintiff is trying to add defendants after the statute of limitations has expired.'" *In re Hechinger Inv. Co.*, 297 B.R. 390, 393 (Bankr. D. Del. 2003) (citing *Gharzouzi v. Northwestern Human Svcs.*, 225 F. Supp. 2d 514, 530 (E.D. Pa 2002)).

The Trustee cannot meet his burden to show that the claims against two new defendants "relate back" to the original complaint. *See In re Enron*, 298 B.R. 513, 522 (Bankr. S.D. N.Y. 2003) ("the party asserting the relation back bears the burden of proof."). Rule 15(c)(1)(C), which is made applicable to this adversary proceeding by Rule 7015, allows an amended pleading to "relate back" to the date of the original pleading for the purpose of adding parties if "the amendment changes the party or the naming of the party against whom a claim is asserted."

5

Fed.R.Bankr.P. 7015; Fed. R. Civ. P. 15(c)(1)(A)-(C).  Rule 15 requires that a party "brought in by amendment: (i) received notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." *Id.* In other words, Rule 15 prevents the statute of limitations from barring claims by plaintiffs who make a mistake regarding a party's identity.

Rule 15(c) does not apply here because this is not a case of mistaken identity.  The Trustee has known since the beginning that OUS TFC and Opus Financial are separate legal entities. (*See, e.g.*, Ex. B; Ex. C (General Ledger Report and SoFA identifying OUS TFC, LLC, and Opus Financial, LLC, as separate entities.)  This Court has held that Rule 15 does not apply where a plaintiff is aware of a distinct legal entity and chooses not to name it in the original complaint.  For example, in *In re Hechinger Investment Co. of Delaware, Inc.*, this Court rejected a plaintiff's attempt to add a defendant's corporate parent to the complaint after the statute of limitations expired. *In re Hechinger Investment Co. of Delaware, Inc.*, 297 B.R. at 394. Because plaintiff was aware of both entities and chose to name only one entity as defendant, plaintiff could not add other entities after the expiration of the statute of limitations. *Id.*  The Court reasoned "[e]ven if [plaintiff's] omission was unintentional, as a proper defendant was named, there is no reason [the new defendants] should have known that they were intended to be named as defendants as well." *Id.* at 394-95. *See also, e.g., Schieszler v. Ferrum College*, 233 F. Supp. 2d 796 (W.D. Va. 2002) (plaintiff could not amend complaint after the statute of limitations expired where new defendants were not substitutes for existing defendants, and failure to sue them in the original complaint was not a mistake.)

OUS TFC and Opus Financial had no reason to know that the Trustee intended to name them as defendants in the original complaint. That OUS TFC and Opus Financial are wholly-owned subsidiaries of Defendant Trusts is irrelevant. No one – neither OUS TFC nor Opus Financial *nor the Trusts* – had reason to believe that the Trustee made any type of "mistake" in failing to name OUS TFC or Opus Financial as defendants. As the Second Circuit has explained, "[t]he requirement that a new defendant 'knew' he was not named due to a mistake concerning identity presupposes that in fact the reason for his not being named was a mistake in identity." *Cornwell v. Robinson*, 23 F.3d 694 (2d Cir. 1994); *see also, e.g., Anderson v. City of Philadelphia*, 65 F. App'x 800, 801 (3d Cir. 2003) (refusing to allow plaintiff to amend because new defendant did not have notice of potential involvement.) OUS TFC and Opus Financial, and their creditors, were entitled to, and likely did, conclude that the Trustee chose not to pursue OUS TFC and Opus Financial. *See, e.g., In re WorldCom, Inc. Securities Litigation*, 294 F. Supp. 2d 431, 449 (S.D.N.Y. 2003) *vacated on other grounds* ("since the plaintiffs knew of the proposed defendants and chose not to name them, they are assumed to have omitted the defendants intentionally, not by mistake.").

The Trustee's attempt to excuse his omission of OUS TFC and Opus Financial from the original complaint based on the SoFA is unavailing. There is no evidence that anyone hid the Transfers. In fact, the SoFA disclosed a number of transfers to OUS TFC, totaling roughly $1.2 million, during 2008. (D.I. 2.) But, for whatever reason, the Trustee chose not to pursue OUS TFC or Opus Financial in the first complaint. Courts do not allow "relation back" where plaintiffs were aware of potential defendants and chose not to pursue them. *See, e.g.,* Wright and Miller, Fed. Prac. & Proc. § 1498.3 (observing that "tactical decisions by plaintiffs as to whom to sue do not constitute mistakes at all for purposes of [Rule 15].").

Likewise, the Trustee cannot "reserve" expired claims against unnamed defendants by making blanket statements in the initial complaint.  The Trustee argues that he can add the new defendants and claims because, in the initial Complaint, he "reserve[d] the right to seek Court permission to amend this Complaint so as to include: . . . additional transfers . . . additional defendants, and/or additional causes of action . . . ." (Pl.'s Second Mot. to Am. Compl., D.I. 129 at ¶ 43.)  But, as the Southern District of New York recently held, trustees cannot preserve unidentified claims against unnamed defendants based on a statement that further information might be discovered after the expiration of the statute of limitations. In *In re Bernard L. Madoff Inv. Securities LLC*, the Southern District of New York refused to allow a trustee to add previously unnamed spouses after the statute of limitations expired.  468 B.R. 620, 630 (Bankr. S.D. N.Y. 2012).  While the trustee had characterized his investigation as "continuing," the Court reasoned that allowing relation back against new defendants due to that characterization "would [e]ffect a dramatic reduction in pleading requirements" that would hurt parties who understood that the statute of limitations had lapsed without any action being taken against them. *Id.; see also Colorado Capital v. Owens*, 227 F.R.D. 181 (E.D. N.Y. 2005) (complaint against a collection agency did not relate back to the original complaint naming "any debt collection firm named at a later date.").  Like *In re Bernard L. Madoff Inv. Securities LLC*, allowing the Trustee to add new defendants and claims based on the blanket "reservation of rights" in his initial complaint would defeat the purpose of the statute of limitations and the pleading requirements.

> b.  *Claims against existing defendants based on transfers not previously alleged do not "relate back."*

The statute of limitations has likewise expired for the claims against Defendants Opus, LLC; Opus Corp; and the Trusts.  The Trustee alleges, wrongly, that even if Rule 15 does not

allow him to amend the complaint to include OUS TFC and Opus Financial, he can still add new

counts based on the Transfers against the Defendants already named. (*See* Pl.'s Second Mot. to

Am. Compl.., D.I. 129 at ¶ 49.)  Pursuant to Rule 15, a claim against an existing defendant

relates back to the date of the original pleading only if "the amendment asserts a claim or defense

that arose out of the conduct, transaction or occurrence set out in the original pleading". Fed. R.

Civ. P. 15 (c)(1)(B). The Third Circuit has held that an amended complaint relates back when the

"amendments ... restate the original claim with greater particularity or amplify the factual

circumstances surrounding the pertinent conduct, transaction or occurrence in the preceding

pleading." *General Motors Corp. v. Schneider Logistics, Inc.*, 2008 WL 2785861, at *5 (E.D. Pa.

July 17, 2008) quoting *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004)).

The newly-alleged claims against Defendants do not state any original claim with

"greater particularity."  The initial complaint does not allege *anything* related to the Transfers.

(Compl., D.I. 1.)  "If plaintiff attempts to allege an entirely different transaction by amendment,

Rule 15(c)(1)(B) will not authorize relation back." Wright and Miller, Fed. Prac. & Proc. § 1497.

*See also In re Metzeler*, 66 B.R. 977, 984 (Bankr. S.D. N.Y. 1986) (noting that preferential

transactions are consistently treated "as separate and distinct under Rule 15(c). . . . The same

should be true of separate fraudulent transfers."). That the Trustee is alleging an entirely new

transaction is obvious given that the Transfers were made to an entity not named as a defendant

in the initial complaint.  "[W]hen the amended pleading does not rely upon the facts and

transactions originally pled or plead them more specifically, but rather is based on new facts and

different transactions, the proposed amendment will not relate back." *In re Austin Driveway*

*Servs. Inc.*, 179 B.R. 390, 395 (Bankr. D. Conn. 1995).  The Trustee cannot, consistent with

Rule 15 and the statute of limitations, allege seven new counts against Defendants based on

transactions entirely separate from those identified and described in the initial complaint − the only complaint filed within the limitations period.

The one case cited by the Trustee, *Global Link Liquidating Trust*, is not to the contrary. *See Global Link Liquidating Trust v. Avantel, S.A.*, 327 B.R. 711 (Bankr. Del. 2005). In that case, this Court held that the Trustee *had* described the underlying transfers in the initial complaint, albeit vaguely. *Id.* at 717. Here, the Trustee does not claim to have alleged the Transfers in the original complaint − instead he claims to have "reserved his right" to bring *any* action against *any* defendant at *any* time in the future. But 11 U.S.C. § 546 gives the Trustee a specified period of time − two years − to investigate potential claims and requires him to allege any avoidance claims within that period. Section 546 does not grant a Trustee a "right" to identify new facts constituting new avoidance claims nearly four years after his appointment by filing a vague "reservation of rights" within the statute of limitations period.

> c. *Equitable tolling is not appropriate as to any defendant because there was no concealment.*

The Trustee asserts that even if Rule 15 does not allow relation back, equitable tolling allows him to bring these claims nearly two years after the statute of limitations expired. (*See* Pl.'s Second Mot. to Am. Compl., D.I. 129 at ¶ 47-48.) But the Trustee cannot meet his burden of proof. *See, e.g., Courtney v. LaSalle Univ.*, 124 F.3d 499, 505 (3d Cir.1997) (plaintiff has the burden to show equitable tolling is warranted). Equitable tolling does not apply where, as here, Defendants did nothing wrong. *See, e.g., In re Keystone Surplus Metals, Inc.*, 452 B.R. 554,558 (Bankr. E.D. Penn. 2011) (quoting *Miklavic v. USAir Inc.*, 21 F.3d 551, 557 (3d Cir. 1994) ("[T]he fundamental rule of equity that a party should not be permitted to profit from its own wrongdoing. This basic principle underlies the equitable tolling doctrine itself.")).

The only alleged basis for equitable tolling is the omission of the Transfers from the SoFA. (*See* Pl.'s Second Mot. to Am. Compl., D.I. 129 at ¶ 48.) The Trustee misstates the record in an effort to suggest this inadvertent omission by Opus East's employees was Defendants' fault. *Id.* The Trustee alleges, without citation, that "Defendants controlled the contents of the Debtor's books and records and assisted in assimilating information for the Debtor's schedules and [SoFA]" *Id.* *Nothing* in the record supports this allegation. Defendants did not "control" the contents of Opus East's books and records, and regardless, the records properly accounted for the Transfers. (*See* Ex. B.) Moreover, Johanna Bolin expressly corrected the Trustee's counsel when he suggested that a "corporate employee" helped prepare the SOFA. (*See* Bolin Dep. at 342:23-343:7)

The Trustee misstates the record presumably in an effort to conceal his lack of diligence in failing until now to complain about the Transfers. The Transfers were reflected in Opus East's books and records, and the Trustee had access to and control of those books and records since his appointment in 2009. (*See,* Ex. B.) A trustee for a Chapter 7 bankruptcy is obligated, by statute, to "investigate the financial affairs of the debtor" and liquidate the estate in a way that is timely, efficient, and in the best interest of interested parties. 11 U.S.C. §§ 704 (1)(4). This obligation includes investigating the books and records of the debtor. *See In re Island Amusement, Inc.*, 74 B.R. 18, 20 (Bankr. D.P.R. 1987). Failing to fulfill these responsibilities is a failure to act with the diligence required to invoke the equitable tolling doctrine. *See In re Lyons*, 130 B.R. 272, 280 (Bankr. N.D. Ill. 1991). *See also In re United Ins. Mgmt.*, 14 F.3d 1380, 1386 (9th Cir. 1994). Furthermore, "when application of equitable tolling turns on the plaintiff's diligence in discovering a cause of action, courts may hold, as a matter of law, that the doctrine does not apply." *In re United Ins. Mgmt.*, 14 F.3d at 1385.

Notably, the Trustee does not identify when he first discovered the Transfers or when he first had access to information regarding the Transfers. (*See e.g.*, Pl.'s Second Mot. to Am. Compl., D.I. 129 at ¶ 4.) Instead he suggests he was only able to "confirm" the $20 Million Transfers at Bolin's deposition in February, and "discovered" the $13.5 Million Transfer "[i]n the course of investigating the $20 Million Transfers." (*Id.* at ¶5.) But the Trustee's claim is belied by the fact that he filed a Second Amended Complaint three months prior to that deposition in which he specifically mentioned the $20 Million Transfer. (*See* Second Am. Compl., D.I. 115 at ¶ 185. ) Likewise, the Trustee's concession that he discovered the $13.5 Million Transfer "in the course of investigating the $20 Million Transfer," demonstrates that the Trustee had access to information regarding both Transfers long before Bolin's deposition last month. The Trustee may not now "rely on his own unawareness of the facts or law to toll the statute." *Hupp v. Gray*, 500 F.2d 993, 996 (7th Cir. 1974).

The three cases cited by the Trustee do not save him from his own lack of diligence. (Pl.'s Second Mot. to Am. Compl., D.I. 129 at ¶ 47.) *Brook* involved a case where the defendant "affirmatively concealed from the trustee" the existence of a patent and the trustee had no reason to review public records that revealed the transfer. *See In re J&D Scis., Inc.*, 335 B.R. 791, 798 (Bankr. M.D. Fla. 2006). This record shows that nobody concealed anything, and the Trustee had a statutory obligation to investigate Opus East's books and records. 11 U.S.C. §§ 704 (1)(4).

The Trustee's citation to *Keystone* is also inapposite. *See In re Keystone Surplus Metals Inc.*, 452 B.R. 554 (Bankr. E.D. Pa. 2011). In that case, a trustee sought leave to amend a complaint less than two months after the statute of limitations expired where the defendant had "active[ly] conceal[ed] several transfers from the [d]ebtor to himself on the SoFA." *Id.* at 561. Likewise, *In re International Administrative Services Inc.* involved a situation where defendant

"crippled" the trustee's ability to investigate the newly-alleged transfers, and caused the delay

that precluded the trustee from bringing the action within the statute of limitations. *See In re*

*International Administrative Services Inc.*, 408 F.3d 689, 696 (11th Cir. 2005). Here, there is no

evidence that Defendants, or anyone else, attempted to conceal the Transfers or impede the

Trustee's investigation. Consistent with the cases cited by the Trustee, equitable tolling is

therefore not appropriate.

### II.    The Trustee Must Show "Good Cause" When Seeking to Amend More than A Year After the Deadline Set in the Scheduling Order.

Even if the statute of limitations did not preclude the Trustee's proposed amendment, the

Trustee's motion still fails because the Trustee cannot show good cause for failing to amend the

Complaint earlier. The Scheduling Order set the deadline to add parties as February 27, 2012,

and the deadline to file amended pleadings as March 16, 2012. (Second Am. Scheduling Order,

D.I. 114 at ¶ 1.) The Trustee filed this motion on March 6, 2013 – about a year after the

deadlines set by the Scheduling Order. *Id.*

Federal Rule of Civil Procedure 16(b), made applicable by Federal Rule of Bankruptcy

Procedure 7016, governs modifications to the court's scheduling order and establishes the

standard for determining whether amendment is proper at this stage in the litigation. *See e.g.,*

*Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 340 & n. 18 (3d Cir. 2000) (affirming trial

court's denial of leave to amend sought more than six months after the deadline). When a

motion to amend is brought after the time set by the scheduling order "a more stringent standard

is applied which requires a showing of good cause by the movant, and consent of the judge."

*Roquette Freres v. SPI Pharma, Inc.*, 2009 WL 1444835 at * 4 (D. Del. May 21, 2009). The

good-cause element requires the movant to demonstrate that, despite diligence, the proposed

claims could not have been reasonably brought in a timely manner. *See Samick Music Corp. v.*

*Delaware Music Indus., Inc.*, 1992 WL 39052, at * 6-7 (D.Del. Feb.12, 1992). In contrast to Rule 15(a), the good cause standard under Rule 16(b) hinges on diligence of the movant, and not on prejudice to the non-moving party. *See Slip Track Sys., Inc. v. Metal Lite, Inc.*, 304 F.3d 1256, 1270 (Fed.Cir.2002).[1]

The Trustee cannot show that "despite diligence, the proposed claims could not have been reasonably sought in a timely manner." *Samick Music Corp.*, 1992 WL 39052, at * 6-7. The Transfers are disclosed in Opus East's books and records, which the Trustee has had since mid-2009. The Trustee had two full years to investigate those records between his appointment and filing this suit in June of 2011, and an additional nine months thereafter to amend the pleadings and add defendants consistent with the Scheduling Order. (Second Am. Scheduling Order, D.I. 114 at ¶ 1.) The Trustee met neither deadline. And the Trustee knew about the Transfers at least four months before filing this motion. (Second Am. Compl., D.I. 115 at ¶ 185.) The Trustee cannot show "good cause" to circumvent the Scheduling Order.

## CONCLUSION

The statute of limitations expired in 2011 for the claims the Trustee now seeks to add. 11 U.S.C. § 546(a)(1)(A). The Trustee cannot satisfy his burden to show that either Rule 15 "relation back" or equitable tolling applies. Nor can the Trustee show good cause to allow an amendment a year after the date set by the Scheduling Order. For the foregoing reasons, the Trustee's Second Motion to Amend the Complaint should be denied.

---

[1] The Trustee acknowledges he must satisfy Rule 16(b). (*See* Pl.'s Second Mot. to Am. Compl. at ¶ 55.) The Trustee focuses throughout his memorandum on the liberal standard of Rule 15(a)(2). But, in the final paragraph of his memorandum, the Trustee acknowledges that the appropriate standard is Rule 16(b), and cursorily claims to have met it. (*Id.* at ¶ 55.)

Dated: March 20, 2013

ASHBY & GEDDES, P.A.

_elWMUUJin free. cl{evi mauc_

William P. Bowden (DE #2553)
Amanda Winfree Herrmann (DE #4615)
500 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Facsimile:  (302) 654-2067
Email:  wbowden@ashby-geddes.com
         aherrmann@ashby-geddes.com

-and-

FAEGRE BAKER DANIELS LLP
John B. Gordon (MN Bar No. 36237)
Dennis M. Ryan (MN Bar No. 161275)
Woodrow T. Roberts III (MN Bar No. 0352949)
Theresa H. Dykoschak (MN Bar No. 0349999)
Jane E. Maschka (MN Bar No. 0389130)
*Pro hac vice applications granted*
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, MN 55402
Telephone:  (612) 766-7229
Facsimile:  (612) 766-1600
Email:  theresa.dykoschak@FaegreBD.com

*Attorneys for all Defendants except Opus Core, LLC*