**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| OPUS EAST, L.L.C., et al., | ) | Case No. 09-12261   (MFW) |
| | ) | |
| Debtors. | ) | Jointly administered |
| _____ | ) | |
| | ) | |
| JEOFFREY L. BURTCH, CHAPTER 7 | ) | |
| TRUSTEE FOR THE ESTATE OF OPUS | ) | |
| EAST, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 11-52423   (MFW) |
| | ) | |
| OPUS, L.L.C.; OPUS CORPORATION; | ) | |
| OPUS FOUNDATION; GERALD | ) | |
| RAUENHORST 1982 IRREVOCABLE | ) | |
| TRUST F/B/O GRANDCHILDREN; THE | ) | |
| GERALD RAUENHORST 1982 | ) | |
| IRREVOCABLE TRUST F/B/O | ) | |
| CHILDREN; KEITH P. BEDNAROWSKI | ) | |
| and LUZ CAMPA as Trustees | ) | |
| thereof and individually; OPUS | ) | |
| REAL ESTATE VII, L.P.; OPUS | ) | |
| REAL ESTATE VIII, L.P.; | ) | |
| MARK RAUENHORST, individually; | ) | |
| ADLER MANAGEMENT, LLC; | ) | |
| MARSHALL M. BURTON, | ) | |
| indivudually; OPUS PROPERTY | ) | |
| SERVICES, LLC; OPUS 2, L.L.C.; | ) | |
| OPUS ARCHITECTS & ENGINEERS, | ) | |
| P.C.; OPUS ARCHITECTS & | ) | |
| ENGINEERS, INC.; OPUS CORE, | ) | |
| L.L.C.; OPUS NORTHWEST, L.L.C.; | ) | |
| OPUS DESIGN BUILD, L.L.C.; | ) | |
| OPUS DEVELOPMENT CORPORATION; | ) | |
| OPUS HOLDING, L.L.C.; OPUS | ) | |
| HOLDING, INC.; OPUS AE GROUP, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION**[1]

Before the Court is the Second Motion to Amend the Complaint filed by Jeoffrey L. Burtch (the "Trustee") against Opus, L.L.C, et al.  For the reasons set forth below, the Court will grant the Motion.

I. PROCEDURAL BACKGROUND

Opus East, L.L.C. (the "Debtor") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on July 1, 2009.  On July 2, 2009, the Trustee was appointed.  The Trustee filed a Complaint (the "Original Complaint") against Opus, L.L.C. and more than a dozen other individuals and entities (together the "Original Defendants") alleging 47 counts on June 30, 2011.  The 47 counts collectively seek damages on account of breaches of fiduciary duties, avoidance and recovery of preferential and fraudulent transfers, damages on account of unjust enrichment and tortious interference with contracts, and the imposition of successor liability.  Each count names the exact Defendants and cause of action asserted against them, including a separate count against a specific Defendant for each

---

[1] The Court is not required to state findings of fact or conclusions of law pursuant to Rule 7052(a)(3) of the Federal Rules of Bankruptcy Procedure.  Accordingly, the Court herein makes no findings of fact or conclusions of law.  Instead, the facts recited are as averred in the Amended Complaint, which must be presumed true for the purposes of this Motion to Dismiss.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

2

allegedly avoidable transfer.

The Defendants responded by filing a Partial Motion to Dismiss. Before a decision on the merits was reached, the Trustee filed a Motion for Leave to Amend the Complaint, adding 13 counts (the "First Amended Complaint"), which was granted on April 4, 2012. Later, the Defendants filed a Partial Motion to Dismiss the First Amended Complaint, which was granted in part, with leave to amend. As a result, the Trustee filed the Second Amended Complaint. All the Defendants, except for Opus Core, filed an Answer to the Second Amended Complaint on December 10, 2012.

The Trustee filed the Second Motion to Amend the Complaint (for a third time) on March 6, 2013. The Third Amended Complaint seeks to avoid and recover preferential and fraudulent transfers from OUS TFC, L.L.C ("OUS TFC") and Opus Financial, L.L.C. ("Opus Financial") (together the "New Defendants") in seven new counts (counts 61 through 67). This Motion has been fully briefed and is ripe for decision.

II. <u>FACTUAL BACKGROUND</u>

The Debtor is a Delaware limited liability company that is a subsidiary within a large network of real estate companies founded by Gerald Rauenhorst ("Rauenhorst"). In 1982, Rauenhorst created two trusts, one for his children and one for

his grandchildren (together the "Trusts"). The Trusts control Opus Corp. and Opus L.L.C., which is the sole member of the Debtor.

Among the many subsidiaries of Opus Corp. and Opus L.L.C. are the New Defendants. The Trustee alleges that the New Defendants were created solely as mechanisms to provide cash to any Opus entity in need. (Third Am. Compl. ¶ 152.) OUS TFC obtained a $150,000,000 line of credit (the "U.S. Bank Loan") from U.S. Bank National Association ("U.S. Bank") to get the capital necessary to assist the Opus subsidiaries. (Id.) The U.S. Bank Loan was guaranteed by Opus Corp. and Opus L.L.C. (Id.)

Pursuant to the parties' request procedure, the Debtor sent a form with the amount requested to the controller and CFO of Opus Corp. OUS TFC then used the U.S. Bank Loan to provide a series of unsecured loans (the "OUS TFC Loans") to the Debtor during 2007 and 2008. (Id. at ¶¶ 153, 54.) The OUS TFC Loans were undocumented until the Debtor executed a demand promissory note in March 2008 in the amount of $25,000,000, with a stated effective date of August 24, 2007. (Id. at ¶ 154.) As of July 9, 2008, the Debtor owed OUS TFC $30,150,000 under the OUS TFC Loans. (Id. at ¶ 155.) On that date the Debtor paid $13,500,000 to OUS TFC. (Id.) On September 9, 2008, the Debtor transferred an additional $20,000,000 to OUS TFC, although the

actual amount owed to OUS TFC at that time was $16,650,000. (Id. at ¶ 156.)  Rather than returning the overpayment, OUS TFC credited that money to Opus Financial.  (Id. at ¶ 166.)  The two transfers, totalling $33,500,000 (the "Transfers"), were subsequently used by OUS TFC to pay down the U.S. Bank Loan. (Id. at ¶ 157.)  The Transfers are the subject of the seven new causes of action asserted in the Third Amended Complaint.

III. JURISDICTION

The Court has jurisdiction over this proceeding.  28. U.S.C. §§ 1134 & 157(b)(2)(A),(E), (F) & (H).

IV. DISCUSSION

The Trustee seeks to add seven counts to the Complaint to avoid and recover preferential and fraudulent transfers under sections 544, 547, 548, and 550 of the Bankruptcy Code and to add the New Defendants.  Rule 15(a) of the Federal Rules of Civil Procedure[2] permits a party to amend its pleading once as a matter of course within 21 days of service of the complaint or any responsive pleading.  Fed. R. Civ. P. 15(a)(1).  However, where a pleading has already been amended, or 21 days has passed from the filing of a responsive pleading, Rule 15(a)(2) permits a party to

---

[2] Rule 15(a) is made applicable to this adversary proceeding by Rule 7015 of the Federal Rules of Bankruptcy Procedure.

amend its pleadings, only by written consent of the opposing party or with leave of the Court. Fed. R. Civ. P. 15(a)(2). See also, Frederick v. Avantix Labs. Inc., 773 F. Supp. 2d 446, 449 (D. Del. 2011).

The Third Circuit has adopted a liberal approach to the amendment of pleadings, holding that absent any undue delay, bad faith, dilatory motives, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of the amendment, leave to amend should be freely granted. Post Confirmation Trust of Fleming Co., Inc. v. Target Corp. (In re Fleming Co., Inc.), 323 B.R. 144, 147 (Bankr. D. Del. 2005) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). The power to grant or deny leave to amend ultimately rests within the Court's discretion and should be given when justice so requires. Fleming, 323 B.R. at 147.

The New Defendants oppose the recent amendment on two grounds: (i) the amendment is futile because it was added after the applicable statute of limitations expired and does not relate back to the Original Complaint, and (ii) the scheduling order, dated December 27, 2011 (the "Scheduling Order") prohibits the Trustee from amending the Complaint at this time.[3]

---

[3] The Trustee unilaterally raises a defense to an undue delay argument in his Motion. The Defendants, however, do not raise the issue in their objection, nor do they argue that prejudice would exist should leave to amend be given. See, e.g., Cureton v. National Collegiate Athletic Ass'n, 252 F.3d 267, 273

A.   <u>Statute of Limitations</u>

The New Defendants first object to the Third Amended Complaint on the ground that the addition of the seven new causes against them is futile because the statute of limitations has expired.[4] See, e.g., <u>Avantix Labs.</u>, 773 F. Supp. 2d at 449 (finding that an amendment can be futile if it fails to state a claim upon which relief can be granted); <u>In re Hechinger Inv. Co.</u>, 297 B.R. 390, 393 (Bankr. D. Del. 2003) ("[L]eave to amend shall not be given where an amendment will be futile and an amendment would be futile if a plaintiff is trying to add defendants after the statute of limitations has expired."); <u>Burtch v. Dent (In re Circle Y of Yoakum, Texas)</u>, 354 B.R. 349, 361 (Bankr. D. Del. 2006) (holding that an amended complaint would be futile under Rule 15(a) if the complaint, as amended, fails to state a claim upon which relief can be granted, just as

---

(3d Cir. 2001) (holding that delay alone is insufficient to deny leave to amend, but grounds to deny may exist if the non-moving party can show undue prejudice as a result of the delay). Therefore, the Court will not address the undue delay argument.

[4]   The Third Circuit allows the affirmative defense of the statute of limitations to be considered in a motion to dismiss where it is apparent on the face of the complaint. See, e.g., <u>Bethel v. Jendoco Const. Corp.</u>, 570 F.2d 1168, 1174 n.10 (3d Cir. 1978) (holding that an affirmative defense may be raised on a Rule 12(b)(6) motion "if the predicate establishing the defense is apparent from the face of the complaint"); <u>Hanna v. United States Veterans' Admin. Hosp.</u>, 514 F.2d 1092, 1094 (3d Cir. 1975) (holding that the statute of limitations defense may be considered as part of a motion to dismiss if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations").

it would under a Rule 12(b)(6) motion to dismiss).

According to section 546(a)(1), an avoidance action may not be commenced after the later of: (A) two years after the entry of the order for relief, or (B) one year after the appointment or election of the first trustee, if such election occurs before the expiration of the period specified in (A).  11 U.S.C. § 546.  Here, the Third Amended Complaint was filed March 6, 2013, and expressly states the Petition Date was July 1, 2009, more than two years before the filing of the amendment.  Thus, the Court finds that the added avoidance actions were filed after the relevant statute of limitations had expired.  Therefore, the amendment must be considered futile, unless, as the Trustee argues, the added claims relate back to the Original Complaint or the statute of limitations can be equitably tolled.

      1.   <u>Relation Back</u>

Notwithstanding the expiration of the statute of limitations, an amendment may be allowed if it relates back to the original complaint.  <u>Peltz v. CTC Direct, Inc. (In re MBC Greenhouse, Co.)</u>, 307 B.R. 787, 789 (Bankr. D. Del. 2004).  Rule 15(c) of the Federal Rules of Civil Procedure sets forth the circumstances under which amendments may relate back to the original complaint.  Rule 15(c) provides in pertinent part:

> (c) Relation Back of Amendments.
> (1) When an Amendment Relates Back.  An amendment to a pleading relates back to the date of the original pleading when:

8

> (A) the law that provides the applicable statute of limitations allows relation back;
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c).

The relation back doctrine is designed to balance a defendant's interest in the protection afforded by the statute of limitations with the preference of the Rules for resolving disputes on their merits. See Krupski v. Costa Crociere S.P.A., 130 S. Ct. 2485, 2488 (2010). Courts have stated that the "touchstone" for relation back is fair notice because "a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." Glover v. F.D.I.C., 698 F.3d 139, 146 (3d Cir. 2012) (internal quotations omitted).

The New Defendants deny that the new claims relate back for two reasons. First, the New Defendants argue that the new allegations in the Third Amended Complaint have no factual nexus to the Original Complaint because they are relying upon an

9

entirely new set of facts and transactions rather than restate any original claim with greater particularity. See, e.g., Coan v. O & G Indus. Inc. (In re Austin Driveway Serv., Inc.), 179 B.R. 390, 395 (Bankr. D. Conn. 1995) (holding that an amended complaint that relies on new facts and different transactions from those originally pled will not relate back to the original pleading); Lenox Healthcare, 343 B.R. at 106 (finding that an amendment did not relate back because it challenged new transfers that were not supported by specific facts in the original complaint); MBC Greenhouse, 307 B.R. at 792-93 (holding that thirty-three separate transactions did not relate back to original complaint because they relied upon a whole new set of facts).

In response, the Trustee offers no evidence or arguments that address how the new claims in the Third Amended Complaint have a factual nexus with any claims set forth in the Original Complaint. As a result, the Court agrees with the New Defendants that the claims added in the Third Amended Complaint do not attempt to clarify, or provide greater particularity to, any of the facts pled in the Original Complaint. Notably absent from the Original Complaint are any allegations relating to the OUS TFC Loans and their subsequent repayment.[5] Instead, the facts

---

[5] The Second Amended Complaint briefly mentions the OUS TFC Loans only as support for the Trustee's action to pierce the corporate veil.

10

alleged in the Third Amended Complaint are completely new and are used to support different claims from those raised in the Original Complaint.

In addition, the New Defendants argue that the Trustee's lack of detail regarding the OUS TFC Loans in the Original Complaint did not satisfy Rule 15(c)(1)(B)'s requirement that the New Defendants be provided sufficient notice that additional allegations may be pursued. See, e.g., Golden v. The Guardian (In re Lenox Healthcare, Inc.), 343 B.R. 96, 105 (Bankr. D. Del. 2006) (holding that the relation back analysis focuses on whether the fact situation in the original complaint provides notice to the defendant that additional allegations would be pursued); Austin Driveway, 179 B.R. at 395 (holding that the rationale behind Rule 15(c)(1)(B)'s allowance of new claims to relate back focuses on the defendant being given the same level of notice that the statute of limitations was intended to provide from the general fact situation stated in the original pleading).

In response, the Trustee argues that the general recovery seeking language in the Original Complaint was sufficient to put the New Defendants on notice that new allegations may be brought. In support of his argument, the Trustee cites Global Link Liquidating Trust (In re Global Link Telecom Corp.), 327 B.R. 711, 717 (Bankr. D. Del. 2005), for the proposition that language generally seeking recovery of all transfers satisfies Rule

11

15(c)'s relating back requirement.

The Court disagrees with the Trustee's reading of <u>Global Link</u> and finds that it is distinguishable. In <u>Global Link</u> the Court held that the initial complaint had sufficiently described the underlying transfers to satisfy the relating back standard. <u>Id.</u> The language in the complaint stated that the debtor made fraudulent transfers to the defendant without specifying an amount. The trustee amended the complaint to add specific fraudulent transfers against the same defendant. <u>Id.</u> at 716-17. Here, in contrast, the Court finds that the Trustee did not describe the Transfers sought to be avoided in the Third Amended Complaint at all in the Original Complaint. In the Original Complaint, the Trustee specifically identified by amount, transferor, and transferee (none of whom included the New Defendants) the transfers to be avoided. None of those transfers include the Transfers sought to be added in the Amended Complaint. <u>See, e.g.</u>, <u>Buchwald Capital Advisors, LLC v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)</u>, 447 B.R. 170, 182 (Bankr. S.D.N.Y. 2011) ("In avoidance litigation, each transfer is treated as a separate transaction for purposes of applying the 'relation back' doctrine"); <u>In re Metzeler</u>, 66 B.R. 977, 984 (Bankr. S.D.N.Y. 1986) (noting that "courts have consistently treated preferential transactions as separate and distinct under Rule 15(c)" and reasoning that fraudulent

transfers should be treated the same way). Therefore, the Court finds that the new claims added to the Third Amended Complaint do not relate back to the claims articulated in the Original Complaint.

    2.   Equitable Tolling

The Trustee alternatively argues that the statute of limitations was equitably tolled in this case. Equitable tolling functions as a way to stop the statute of limitations from running. Oshiver v. Levin, 38 F.3d 1380, 1387 (3d Cir. 1994). In a non-exclusive list, the Third Circuit has cited three situations where equitable tolling may be appropriately applied: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." Id. If circumstances are shown that warrant the application of equitable tolling, the initial running of the statutory period will be tolled until the plaintiff knows, or should reasonably be expected to know, the concealed facts supporting the cause of action. In re Rowland, 275 B.R. 209, 216 (Bankr. E.D. Pa. 2002).

In this case, the New Defendants argue that equitable tolling should not apply because they did not affirmatively conceal any information from the Trustee regarding the Transfers.

See, e.g., Keystone Surplus, 452 B.R. at 561 (holding that a defendant's active concealment of transfers at the section 341 meeting warrants equitable tolling); Brook v. Alphamed Pharmaceuticals Corp. (In re J&D Sciences, Inc.), 335 B.R. 791, 798 (Bankr. M.D. Fla. 2006) (holding that affirmative concealment of a transfer is sufficient to warrant equitable tolling).

In response, the Trustee argues that the New Defendants' conduct is irrelevant to the analysis and that the Debtor's negligent concealment of the Transfers on its Statement of Financial Affairs permits equitable tolling. See, e.g., Heyman v. Dec (In re Dec), 272 B.R. 218, 226 (Bankr. N.D. Ill. 2001) (holding that lack of affirmative action by a defendant does not preclude equitable tolling, and that the inquiry focuses on the concealment actions of the debtor-transferor, not the defendant-transferee); Pomaville, 190 B.R. at 637 (holding that the statute of limitations can also be tolled when fraud goes undiscovered because the debtor negligently concealed an asset, even though the defendant did nothing to conceal the asset); White v. Boston (In re White), 104 B.R. 951, 956 (S.D. Ind. 1989) (holding that if a debtor negligently facilitates fraud by failing to schedule assets, the tolling will last until the fraud could reasonably have been discovered by a trustee exercising due diligence).

The New Defendants also contend that equitable tolling is not appropriate because the Trustee failed to perform his

statutory obligation to thoroughly investigate the financial affairs of the Debtor.  11 U.S.C. § 704(a)(4).  See also, Ernst & Young v. Matsumoto (In re United Ins. Mgmt., Inc.), 14 F.3d 1380, 1386 (9th Cir. 1994) (holding that a failure to perform the statutory obligation to examine the debtor's books and records nullifies the trustee's ability to invoke the doctrine of equitable tolling).  The New Defendants assert specifically that the Trustee did not satisfy the appropriate level of due diligence required by a trustee because he was in possession of the Debtor's books and records prior to the expiration of the statute of limitations and could have reasonably learned about the Transfers.  See, e.g., Hupp v. Gray, 500 F.2d 993, 996 (7th Cir. 1974) (holding that plaintiff has burden of showing that he exercised reasonable care and diligence in seeking to learn facts relating to fraud and cannot rely on his own unawareness of the facts or law to toll statute); Steege v. Lyons (In re Lyons), 130 B.R. 272, 280 (Bankr. N.D. Ill. 1991) (holding that waiting until after the statute of limitations to file a complaint for transfers discovered prior to expiration is not acting with the diligence required to properly invoke equitable tolling).

In response, the Trustee argues that equitable tolling should apply in this case because he properly relied on the Debtor's sworn Statement of Financial Affairs, which did not include the Transfers, to meet his statutory obligation.  See,

15

e.g., Gennet v. Docktor (In re Levy), 185 B.R. 378, 386 (Bankr. S.D. Fla. 1995) (holding that a trustee has a right to rely on the sworn schedules filed by a debtor and that such reliance should not preclude recovery if the existence of the asset is not revealed until after the expiration of the limitation period); Anderson v. Vereen (In re Vereen), 219 B.R. 691, 696 (Bankr. D. S.C. 1997) (holding that as a general rule a trustee is entitled to rely on the truthfulness and accuracy of a debtor's schedules and is not required to assume that the debtor is lying); Havis v. AIG Sunamerica Life Assurance Co. (In re Bossart), Adv. No. 06-3540, 2007 WL 4561300, at *10 (Bankr. S.D. Tex. Dec. 21, 2007) (holding that it is the debtor's duty to make as full and complete a disclosure as possible and not the trustee's duty to play "connect-the-dots" with the debtor's schedules and statement of financial affairs).

The Trustee argues that he could not have reasonably been expected to learn about the Transfers prior to the expiration of the statute of limitations without some indication that they existed. See, e.g., Levy, 185 B.R. at 386 (finding that it was unrealistic for a trustee to perform a title search for a condominium when the debtor failed to reflect an interest in such condominium on its statement of financial affairs); Pomaville, 190 B.R. at 637 ("Due diligence requires a trustee to conduct searches that are realistic in the ordinary course of a trustee's

performance of his duties.  Searches need not be so extensive that service as a trustee is rendered economically implausible."); Dec, 272 B.R. at 231 (holding that a trustee does not have an obligation to investigate every matter brought to his attention nor to reconstruct a debtor's financial affairs).

Here, the Court agrees with the Trustee that the doctrine of equitable tolling should apply.  First, it is undisputed that the Debtor failed to list the Transfers on its Statement of Financial Affairs.  The Court finds this to be sufficient evidence of the Debtor's concealment of the transfers.  Further, it was reasonable for the Trustee to rely on the information provided by the Debtor, because there was no indication that the schedules were inaccurate.

Second, the Court finds that the Trustee sufficiently carried out his duty of due diligence in seeking to learn the facts of the Transfers.  The Trustee was not required to conduct an overwhelming search to specifically seek out transfers that were not listed on the Debtor's sworn schedules.  The Trustee is entitled to rely on the information provided by the Debtor in its Statement of Financial Affairs and should not be expected to reconstruct the Debtor's financial affairs on a hunch of possible concealment. This is particularly so considering that the Debtor listed more than 1,400 other transfers on its schedules; the Trustee had no reason to believe that the Debtor had failed to

list any transfers.  The Court is also not persuaded by the New Defendants' argument that the Trustee should have learned about the Transfers prior to the expiration of the statute of limitations because he was in possession of the Debtor's books and records.  The Trustee cannot be expected to search the books and records of the Debtor without any reason to believe all transfers were not included in the sworn schedules.

Therefore, the Court finds that the statute of limitations was equitably tolled until the time that the Trustee reasonably could have known about the Transfers.  As a result of the Debtor's concealment of the Transfers, the Trustee could not have reasonably been expected to learn about the facts of the Transfers at issue until the discovery process began in this adversary.

B.  Scheduling Order

The New Defendants also argue that the Scheduling Order entered in this adversary precludes the filing of an Amended Complaint at this time and there is no good cause to modify it now because the Trustee's lack of diligence in investigating the Debtor's books and records was the cause of his failure to amend the Complaint earlier.[6]  See, e.g., Slip Track Sys., Inc. v. Metal-Lite, Inc., 304 F.3d 1256, 1270 (Fed. Cir. 2002) (holding

---

[6] Pursuant to Rule 16(b)(4), a schedule may be modified only for good cause and with the judge's consent.  Avantix Labs., 773 F. Supp. 2d at 449.

that the good cause standard primarily considers the diligence of the moving party and that modification may be given if the scheduling order cannot reasonably be met despite the diligence of the moving party); E. Minerals & Chem. Co. v. Mahan, 225 F.3d 330, 340 (3d Cir. 2000) (affirming trial court's denial of leave to amend under Rule 16(b) because of plaintiff's lack of diligence).

In response, the Trustee argues that the Scheduling Order should be amended because he was unable through ordinary due diligence to learn about the Transfers. See, e.g., Avantix Labs., 773 F. Supp. 2d at 451 (holding that good cause may exist when the imposed schedule cannot reasonably be met despite the diligence of the party seeking the extension); Cordance Corp. v. Amazon.com, Inc., 255 F.R.D. 366, 374 (D. Del. 2009) (finding that the scheduling order should be amended because there was a sufficient demonstration of good cause).

Here, the Court agrees with the Trustee that there is good cause to amend the Scheduling Order. The Scheduling Order set February 27, 2012, as the deadline to add new parties, and March 16, 2012, as the deadline to amend the pleadings. However, the Trustee was unaware of the Transfers until February 13, 2013, when during a deposition, the Debtor's former Chief Financial Officer introduced spreadsheets and testified regarding the internal accounting of the Transfers. (Adv. D.I. 130 at Ex. B.)

That deposition was long after the Scheduling Order's deadlines to add new parties and amend the pleadings. Therefore, the Court will amend the Scheduling Order to allow the Trustee to file the Third Amended Complaint.

V.  CONCLUSION

For the foregoing reasons, the Court will grant the Trustee's Second Motion to Amend the Complaint.

An appropriate Order is attached.

Dated: August 6, 2013               BY THE COURT:

*[signature]*

Mary F. Walrath
United States Bankruptcy Judge