IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br><br>OPUS EAST, LLC, et al,<br><br>     Debtors.<br><br>—————————————————<br><br>JEOFFREY L. BURTCH, CHAPTER 7<br>TRUSTEE FOR THE ESTATE OF OPUS<br>EAST, LLC,<br><br>     Appellant,<br><br>   v.<br><br>OPUS, LLC et al,<br><br>     Appellees. | Bankruptcy Case No. 09-12261<br>Bankruptcy Adv. No. 11-52423 (MFW)<br><br><br><br>Civil Action No. 15-346-RGA<br>Consolidated |

## MEMORANDUM OPINION

Dale R. Dube, Esq., Robert W. Pedigo, Esq., COOCH AND TAYLOR, P.A., Wilmington, DE; Steven D. Sanfelippo, Esq. (argued), M. Ross Cunningham, Esq., Marc D. McPeak, Esq., CUNNINGHAM SWAIM, LLP, Dallas, TX, attorneys for Appellant.

William P. Bowden, Esq., ASHBY & GEDDES, P.A., Wilmington, DE; Dennis M. Ryan, Esq. (argued), Woodrow T. Roberts III, Esq., Jane E. Maschka, Esq., FAEGRE BAKER DANIELS LLP, Minneapolis, MN, attorneys for Appellees.

March _31_, 2016

*Richard G. Andrews*

**ANDREWS, U.S. DISTRICT JUDGE:**

Presently before the Court is an appeal by Jeoffrey L. Burtch (the "Trustee"), the Chapter 7 trustee for the bankruptcy estate of Opus East, LLC ("Opus East"), challenging the Bankruptcy Court's judgment (D.I. 300, 301, 302),[1] after a two-week trial, in favor of Appellees with respect to sixty of the sixty-seven counts alleged by the Trustee. (C.A. No. 15-346 D.I. 1). Briefing is complete (C.A. No. 15-346 D.I. 15, 16, 17) and the Court heard oral argument on December 15, 2015. For the reasons that follow, the judgment of the Bankruptcy Court is **AFFIRMED**.

## I. BACKGROUND

This is an appeal from a judgment in an adversary proceeding in the U.S. Bankruptcy Court for the District of Delaware arising out of the affairs of Opus East, a Delaware limited liability company. (C.A. No. 15-346 D.I. 1; D.I. 1). Opus East was formed to develop, build, and sell commercial real estate projects in the Northeastern and Mid-Atlantic United States. (D.I. 218 at 11). The facts are well known to the parties and are laid out in the Bankruptcy Court's thorough opinion. *In re Opus East, LLC v. Opus, LLC*, 528 B.R. 30 (Bankr. D. Del. 2015). The facts are therefore only briefly summarized below.

Opus East was part of a network of entities that was structured, in part, as follows: At the top were two trusts created by Gerald Rauenhorst for the benefit of his children and grandchildren (the "Trusts"). (D.I. 218 at 6). The Trusts owned Opus, LLC and Opus Corp. (Opus, LLC and Opus Corp. collectively, the "Holding Companies"). (*Id.* at 7). The Holding Companies established several regional operating subsidiaries, including Opus East. (*Id.* at 11–12; D.I. 232 at 22). The operating companies formed a special purpose entity for each real estate project they developed. (D.I. 232 at 22–23, 28; D.I. 233 at 4).

---

[1] Citations to "D.I.___" are to the Bankruptcy Court docket in Bankr. Adv. No. 11-52423 unless otherwise noted.

The Holding Companies also owned other entities that provided financial, payroll, architectural, and other services to other entities in the "Opus" network. (D.I. 232 at 22–23, 28; D.I. 255 at 192; D.I. 256 at 195–96). Some of the other entities, including OUS TFC, LLC and Opus Financial, LLC, loaned money to the Holding Companies and their operating subsidiaries, including Opus East. (D.I. 218 at 19–21; D.I. 252 at 157; D.I. 256 at 24). In addition to loans from Opus entities, Opus East and its special purpose entities obtained construction financing from outside banks. (D.I. 218 at 18; D.I. 236 at 109–11; D.I. 257 at 83–84).

Opus East operated successfully from 1994 until 2008. (D.I. 218 at 11; D.I. 236 at 140–41). After the failure of Lehman Brothers and the subsequent collapse of the financial markets, Opus East became unable to sell its completed real estate projects or to obtain financing to complete projects in process. *See In re Opus East, LLC*, 528 B.R. at 51. Ultimately, Opus East filed for chapter 7 bankruptcy. (Bankr. No. 09-12261 D.I. 1). In 2011, the Trustee filed a complaint commencing adversary proceedings in the Bankruptcy Court against Opus, LLC; Opus Corporation; the Opus Foundation; the Gerald Rauenhorst 1982 Irrevocable Trust f/b/o Grandchildren; the Gerald Rauenhorst 1982 Irrevocable Trust f/b/o Children; Mark Rauenhorst; Keith P. Bednarowski (individually and as trustee of the Gerald Rauenhorst 1982 Irrevocable Trusts); Luz Campa (individually and as trustee of the Gerald Rauenhorst 1982 Irrevocable Trusts); Opus Real Estate VII, LP; Opus Real Estate VIII, LP; Adler Management, LLC; Marshall M. Burton; Opus Property Services, LLC; Opus 2, LLC; Opus Architects & Engineers, P.C.; Opus Architects & Engineers, Inc.; Opus Core, LLC; Opus Northwest, LLC; Opus Design Build, LLC; Opus Development Corporation; Opus Holding, LLC; Opus Holding, Inc.; and Opus AE Group, Inc. (collectively, "Defendants" or "Appellees"). (D.I. 1; D.I. 160). The Trustee alleged sixty-seven counts in the adversary proceeding, including claims for avoidance

3

and recovery of preferential and fraudulent transfers, for breach of fiduciary duty, and to pierce the corporate veil. (D.I. 1; D.I. 160). The Bankruptcy Court entered judgment in the Trustee's favor on seven of the counts alleged and in Defendants' favor on sixty of the counts alleged. (D.I. 300, 301, 302). The Trustee appeals the judgments entered in favor of Defendants on several grounds, including that the Bankruptcy Court erred in concluding that Opus East was not insolvent until February 1, 2009; that the Trustee could not pierce the corporate veil; that no Defendant breached a fiduciary duty; and that no Defendant was unjustly enriched. (C.A. No. 15-346 D.I. 15 at 22, 33, 47, 55).

## II. STANDARD OF REVIEW

The Court has jurisdiction to hear an appeal from a final judgment of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). In undertaking a review of the issues on appeal, the Court applies a clearly erroneous standard to the Bankruptcy Court's findings of fact and a plenary standard to its legal conclusions. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). With mixed questions of law and fact, the Court must accept the Bankruptcy Court's finding of "historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" *Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991) (quoting *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–02 (3d Cir. 1981)). In other words, this Court reviews a decision of the Bankruptcy Court in the same manner as the Third Circuit usually reviews judgments of this Court.

4

## III.   DISCUSSION

### A.  Date of Insolvency

A substantial portion of the Trustee's case turns on the date on which the Bankruptcy Court found that Opus East became insolvent. (*See* D.I. 160; D.I. 300 at 10). Opus East's insolvency was a factor in the Trustee's veil piercing claim and in the claims of alleged fraudulent and preferential transfers. *See* 11 U.S.C. § 547(b)(3); 11 U.S.C. § 548(a)(1)(B)(ii)(II–III); Del. Code Ann. tit. 6 § 1304; Del Code Ann. tit. 6 §1305; *Trs. of Nat. Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 194 (3d Cir. 2003); *Peltz v. Hatten*, 279 B.R. 710, 742 (D. Del. 2002), *aff'd sub nom. In re USN Commc'ns, Inc.*, 60 F. App'x 401 (3d Cir. 2003). Insolvency is a mixed question of law and fact. *In re Trans World Airlines, Inc.*, 134 F.3d 188, 193 (3d Cir. 1998). "While factual findings are reviewed only for clear error, our review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts is plenary." *Id.* (internal quotation marks omitted). For the reasons below, I conclude that the Bankruptcy Court did not err in holding that Opus East did not become insolvent until February 1, 2009.

#### 1. Balance Sheet Insolvency

The Trustee argues that the Bankruptcy Court erred in applying a going concern, instead of liquidation, valuation of Opus East's assets prior to February 1, 2009. (C.A. No. 15-346 D.I. 15 at 28). The Trustee argues, further, that even under the erroneously applied going concern valuation, the Bankruptcy Court clearly erred in relying on Opus East's expert's opinions and testimony and discounting the opinions and testimony of the Trustee's expert. (*Id.* at 23–26).

Appellees argue that the Bankruptcy Court did not err in concluding that the Trustee failed to satisfy his burden to establish that Opus East was insolvent before February 1, 2009.

5

(C.A. No. 15-346 D.I. 16 at 18). First, Appellees argue that the Bankruptcy Court correctly held that Opus East was a going concern before February 1, 2009. (*Id.* at 22–26). Second, Appellees argue that the Bankruptcy Court correctly rejected Quentin Mimms's 40–50% "liquidation discount" of Opus East's assets as incompatible with a going concern valuation. (*Id.* at 26–27). Appellees also argue that the Bankruptcy Court did not clearly err by relying on their expert, Dan Lentz. (*Id.* at 27–29).

The parties' experts agreed that Opus East's liabilities as of June 30, 2008 were about $237 million to $242 million. *In re Opus East, LLC*, 528 B.R. at 52; (C.A. No. 15-346 D.I. 15 at 23–24; C.A. No. 15-346 D.I. 16 at 20). Opus East's unaudited balance sheet as of June 30, 2008 reported assets of $317 million. *In re Opus East, LLC*, 528 B.R. at 52. Thus, to establish balance sheet insolvency as of June 30, 2008, the Trustee bore the burden to show that Opus East's balance sheet overstated the value of Opus East's assets by $75 million to $80 million. *See In re Fruehauf Trailer Corp.*, 444 F.3d 203, 211 (3d Cir. 2006) ("The party bringing the fraudulent conveyance action bears the burden of proving each of these elements by a preponderance of the evidence.").

The Bankruptcy Court did not err in concluding that Opus East was a going concern before February 1, 2009 and thus properly applied a going concern valuation. "A business does not have to be thriving in order to receive a going concern valuation. Before the going concern valuation is to be abandoned, the business must be wholly inoperative, defunct or dead on its feet." *In re EBC I, Inc.*, 380 B.R. 348, 355 (Bankr. D. Del. 2008), *aff'd*, 400 B.R. 13 (D. Del. 2009), *aff'd*, 382 F. App'x 135 (3d Cir. 2010) (internal quotation marks omitted); *Moody v. Sec. Pac. Bus. Credit*, 971 F.2d 1056, 1067 (3d Cir. 1992) ("Where bankruptcy is not 'clearly imminent' on the date of the challenged conveyance, the weight of authority holds that assets

6

should be valued on a going concern basis."). The Bankruptcy Court did not clearly err in

finding that Opus East was not balance sheet insolvent on June 30, 2008 based on Opus East's

2008 unaudited financial statements. *See In re Opus East, LLC*, 528 B.R. at 51 ("[I]t is evident

that there was no substantial change in [Opus East's] circumstances through at least March 31,

2008, because the financial statements issued on that date included no events through that date

that caused KPMG to question [Opus East's] ability to continue as a going concern."); (PX 1103

at p. 178013 (email from KPMG concluding that there is no need to restate Opus East's financial

statements as there were no "errors . . . material to the Opus East 2008 or 2007 financial

statements")).[2] The Bankruptcy Court also did not clearly err in considering evidence that Opus

East was able to obtain loans and sell assets in the ordinary course of business, together with the

unaudited 2008 financial statements, as supporting its conclusion that Opus East was solvent

under the balance sheet test between June 30, 2008 and February 1, 2009. *See In re Opus East,

LLC*, 528 B.R. at 53.

The Bankruptcy Court did not err in concluding that a going concern valuation was

applicable despite the existence of Notes to OUS TFC, LLC and Opus Financial, LLC that had

not matured. The Notes are governed by Minnesota and South Dakota law. (C.A. No. 15-346

D.I. 16 at 23 n.4; *see* C.A. No. 15-346 D.I. 17 at 15–16 (not disputing applicable law)). Under

Minnesota and South Dakota law, where "it is evident the parties did not contemplate that the

particular instrument should be due immediately," an actual "demand is necessary to mature" the

Notes. *Eggers v. Eggers*, 110 N.W.2d 339, 342 (S.D. 1961); *Severson v. Morris*, 2002 WL

31056714, at *2 (Minn. Ct. App. Sept. 17, 2002). Here, the terms of the Notes required that any

demand by OUS TFC, LLC or Opus Financial, LLC be in writing and that payment be made five

---

[2] Citations to "PX" and "DX" are to trial exhibits in the Bankruptcy Court.

days after such written demand. *In re Opus East, LLC*, 528 B.R. at 52; (D.I. 257 at 69–73). The Bankruptcy Court credited the trial testimony of Bolin, Power, and Lentz that there were never any demands under the Notes (D.I. 234 at 212; D.I. 256 at 22; D.I. 257 at 67) over the email from Power on which the Trustee relies, which asks "when do you plan on returning the advance?" (PX 275 at p. 225986; C.A. No. 15-346 D.I. 15 at 28 & n.134). The Bankruptcy . Court is entitled to deference in weighing the evidence; it was not clear error for the Bankruptcy Court to conclude that no demands for payment were made.

Witness testimony supported the Bankruptcy Court's finding that, until the sale of the 100 M Street project fell through on January 31, 2009, Opus East's management reasonably believed that Opus East would continue operating. *In re Opus East, LLC*, 528 B.R. at 53 (citing, *e.g.*, D.I. 234 at 204–05; D.I. 252 at 207–08, 213, 221–22, 253). It was not clear error for the Bankruptcy Court to credit those witnesses' testimony over October 2008 Board Meeting minutes stating that Opus East's income statement projection "is heavily relying on the sale of 100 M St. closing in 2008" (PX 752 at p. 135939) and Burton's testimony that in late 2008 he started to worry about whether 100 M Street was actually going to close (D.I. 252 at 216–17). Additionally, Opus East was able to "sell several projects at more than liquidation value, even as late as the third quarter of 2008." *In re Opus East, LLC*, 528 B.R. at 53. The Bankruptcy Court concluded that Opus East "had adequate capital and credit and was able to sell its projects at going concern values before [February 1, 2009]." *Id.* at 53. Thus, the Bankruptcy Court did not err in applying going concern rather than liquidation value to Opus East's assets prior to February 1, 2009.

The Bankruptcy Court did not clearly err in crediting Lentz's testimony and rejecting Mimms's 40–50% liquidation discount of Opus East's assets as incompatible with a going

8

concern valuation. *See In re Opus East, LLC*, 528 at 52.[3]  Assets of a going concern "must be analyzed in a realistic framework considering amounts that can be realized in a reasonable time." *In re Trans World Airlines*, 134 F.3d at 193 (internal quotation marks omitted).  A "reasonable time" is "not so short a period that the value of the goods is substantially impaired via a forced sale, but not so long a time that a typical creditor would receive less satisfaction of its claim . . . by waiting for the possibility of a higher price."  *Id.* at 195.  The court in *In re Trans World Airlines* upheld a twelve- to eighteen-month time period for the sale of the airline's operating assets.  *Id.*  Here, the Bankruptcy Court rejected as incompatible with a going concern valuation Mimms's assumption that Opus East had to sell its real estate assets within a month, a period of time so short that it reduced the assets' value by 40–50%.  *In re Opus East, LLC*, 528 B.R. at 52. The Bankruptcy Court did not clearly err in concluding that such a substantial discount was incompatible with a going concern valuation.  Further, the Bankruptcy Court's decision to credit the opinion of one expert over another is subject to deference by this Court.  *See In re Unisys Sav. Plan Litig.*, 173 F.3d 145, 157–58 (3d Cir. 1999).  Although Lentz relied on Opus East's financial statements, he testified that he examined company records and otherwise inquired into the reliability of those statements.  (D.I. 257 at 9–10, 11–13; C.A. No. 15-346 D.I. 16 at 27–28). The Bankruptcy Court thus did not clearly err in accepting Lentz's testimony over Mimms's regarding the value of Opus East's assets.

---

[3] The Trustee makes much of the fact that the Bankruptcy Court rejected Mimms's analysis because "Mimms used the liquidation (as opposed to the going concern) value of [Opus East's] assets."  *In re Opus East, LLC*, 528 B.R. at 52; (*see* D.I. 15 at 24; D.I. 17 at 6–8).  The Bankruptcy Court's rejection of Mimms's 40–50% liquidation discount is fully consistent with the recognition that a liquidation discount may be appropriate, even under a going concern analysis, to account for the "conversion of assets into cash during a reasonable period of time."  *In re Trans World Airlines, Inc.*, 134 F.3d at 194.  The Bankruptcy Court did not clearly err in concluding that sale of certain real estate assets within thirty days amounted to a forced sale rather than a sale within a reasonable time.  *See id.* at 195.

## 2.  Cash Flow Insolvency and Inadequate Capital

The Trustee argues that the Bankruptcy Court's cash flow insolvency and unreasonably

small capital analyses were flawed because (1) the Court erroneously relied on Opus East's

ability to obtain internal loans in making its cash flow insolvency and unreasonably small capital

conclusions, and (2) the Court erroneously concluded that Opus East adequately "account[ed] for

difficulties that [we]re likely to arise" in the deteriorating market conditions prior to the Lehman

Brothers bankruptcy in September 2008.  (C.A. No. 15-346 D.I. 15 at 29–33).  Appellees argue

that the Bankruptcy Court did not err in concluding that under the inadequate capital and cash

flow tests, Opus East was solvent until February 1, 2009.  (C.A. No. 15-346 D.I. 16 at 29–31).

The Bankruptcy Court found that Opus East's "primary source of capital . . . was its

retained earnings." *In re Opus East, LLC*, 528 B.R. at 56 (citing D.I. 236 at 108–09).

Additionally, Opus East received capital contributions from its member Opus, LLC in the

amount of $10 million in 2007 and $10 million in 2008.  *Id.*  As the Bankruptcy Court found,

"[b]y the end of 2008, through its operations and additional equity contributions from its

member, [Opus East's] equity had grown from $12 million to $75 million." *Id.* (citing D.I. 233

at 245–46).  The Bankruptcy Court did not clearly err in concluding that Mimms's analysis

suffered from hindsight bias and that, given that Opus East's management did not know that a

historic real estate market collapse was imminent, Opus East had sufficient cash flow to operate

and pay its debts as they came due and was not inadequately capitalized.  *Id.* at 55–56; (*see* D.I.

233 at 233–34; D.I. 234 at 93, 200–02; D.I. 235 at 128–31; D.I. 236 at 141, 145; D.I. 252 at 212–

13; D.I. 257 at 41, 42).  The Bankruptcy Court also did not err in rejecting Mimms's testimony

comparing Opus East's financial performance to that of real estate investment trusts, which,

10

unlike Opus East, bought and held commercial real estate. *Id.* at 54–55; (*see* D.I. 233 at 228; D.I. 252 at 235–36; D.I. 257 at 92–94).

The Bankruptcy Court therefore did not err in holding that Opus East did not become insolvent until February 1, 2009.

## B. Breach of Fiduciary Duty

The Trustee argues that the Bankruptcy Court clearly erred in concluding that Rauenhorst, Burton, and Campa did not breach their fiduciary duties to Opus East. (C.A. No. 15-346 D.I. 15 at 47). The Trustee argues that the Bankruptcy Court erred in concluding that the Opus East LLC Agreement modified the fiduciary duties of Rauenhorst, Burton, and Campa such that they could only be held to have breached their fiduciary duties if they acted in bad faith. (*Id.*). The Trustee alleges that, under the applicable standard, Rauenhorst breached his fiduciary duties in the GAMD transfer, by failing to compel the ODP Entities to pay Opus East certain amounts owed, and by transferring $5 million to Bank of America. (*Id.* at 49, 53, 54). The Trustee also alleges that, under the applicable standard, Rauenhorst and Burton violated their fiduciary duties with respect to certain transfers of management company contracts and property and, finally, that Rauenhorst and Campa breached their fiduciary duties by transferring Opus East assets to other Opus group and Trust-owned entities in a "tax scheme." (*Id.* at 52, 54–55).

Appellees argue that the Opus East LLC Agreement modified the standard applicable to Opus East's fiduciaries so that "[i]n the absence of bad faith," no action taken shall be considered a breach "of any duty or obligation . . . including without limitation, a breach of fiduciary duty." (DX 2081 at p. 23; C.A. No. 15-346 D.I. 16 at 38). Appellees further argue that the Bankruptcy Court correctly concluded that no breach occurred under either the applicable

11

"absence of bad faith" standard or the traditional heightened corporate fiduciary duty standards.

(C.A. No. 15-346 D.I. 16 at 39).

The Opus East LLC Agreement, in Section 12.3(ii), provides that fiduciaries must resolve

conflicts of interest and that:

> [T]he Covered Person shall resolve such conflict of interest, taking such action or providing such terms, considering in each case the relative interest of each party (including its own interest) to such conflict, agreement, transaction or situation and the benefits and burdens relating to such interests, any customary or accepted industry practices, and any applicable generally accepted accounting practices or principles. In the absence of bad faith by the Covered Person, the resolution, action, or term so made, taken or provided by the Covered Person shall not constitute a breach of this Agreement or any other agreement contemplated herein or of any duty or obligation of the Covered Person at law, in equity or otherwise, including without limitation, a breach of fiduciary duty.

(DX 2081 at p. 23). The relaxed "absence of bad faith" standard under the Opus East LLC

Agreement is triggered only if the officer or director has complied with the process requirements

set forth in the Agreement to attempt to resolve conflicts of interest. *See Gelfman v. Weeden

Investors, L.P.*, 859 A.2d 89, 117 (Del. Ch. 2004). The Bankruptcy Court did not explicitly

consider whether Rauenhorst, Burton, and Campa satisfied the process requirements of Section

12.3(ii) of the Opus East LLC Agreement for each challenged transaction.[4] Whether the

fiduciaries satisfied the process requirement to trigger the lower fiduciary standard does not

affect the outcome of this appeal, however, because I find no error in the Bankruptcy Court's

conclusion that the Appellees did not breach their fiduciary duties even if the traditional

heightened corporate fiduciary duty standards were applicable.

---

[4] The Bankruptcy Court did specifically find that Rauenhorst and Burton undertook the required analysis to resolve conflicts of interest for the transfer of ME to GAMD. *See In re Opus East, LLC*, 528 B.R. at 70, 71 (citing D.I. 252 at 266, 274–77 (Burton); D.I. 235 at 72–75, 77, 126 (Rauenhorst)). That the Bankruptcy Court concluded, without clear error, that Rauenhorst and Burton satisfied the process requirement of Section 12.3(ii) and did not conduct the transfer in bad faith is another reason to affirm its judgment with respect to that transaction.

An officer or director owes its company a duty of care, a duty of loyalty, and a duty to act in good faith. *In re Fedders N. Am., Inc.*, 405 B.R. 527, 539 (Bankr. D. Del. 2009). To succeed on a claim for breach of the duty of care under the traditional standards, a party must demonstrate that the fiduciary acted with gross negligence. *Id.* To succeed on a claim for breach of the duty of loyalty under the traditional standards, a party must demonstrate that the fiduciary was on both sides of a transaction and that the transaction was not fair to the company. *Id.* at 540. Under the traditional standards, the duty of good faith requires "true faithfulness and devotion to the interests of the corporation and its shareholders" and is breached if a fiduciary acts with a purpose other than advancing the best interests of the company. *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 67 (Del. 2006).

The Bankruptcy Court did not clearly err in concluding that Appellees did not breach their fiduciary duties under the traditional heightened corporate fiduciary duty standards. *See In re Opus East, LLC*, 528 B.R. at 68–80. The transfer to GAMD was fair to Opus East because, as the Bankruptcy Court found, the NOAA project was of little to no value to Opus East. *See id.* at 70–72; (*see also* D.I. 235 at 70–77, 126; D.I. 252 at 152, 261–66, 272–74). The Bankruptcy Court did not clearly err in finding that Rauenhorst and Burton did not breach their fiduciary duties with respect to the management contracts transfer because the management contracts were "essentially worthless" before they were transferred and because the April 2009 management fees did not belong to Opus East. *See In re Opus East, LLC*, 528 B.R. at 73–74; (*see also* D.I. 232 at 176–77; D.I. 235 at 35–38; D.I. 252 at 283). The Bankruptcy Court did not commit clear error in concluding that Rauenhorst and Campa were not requested to compel ODP to pay Opus East the disputed fees owed by ODP entities. *See In re Opus East, LLC*, 528 B.R. at 75–76; (*see also* D.I. 252 at 278–79). The Bankruptcy Court did not commit clear error in concluding that

13

Rauenhorst did not breach a fiduciary duty when Opus East's subsidiary transferred $5 million to

Bank of America because the money never belonged to Opus East. *See In re Opus East, LLC,*

528 B.R. at 76–78; (*see also* D.I. 235 at 126–27). Finally, the Bankruptcy Court did not clearly

err in crediting the testimony of witnesses who stated that there was no pre-determined plan to

reap a tax benefit from Opus East's losses. *See In re Opus East, LLC,* 528 B.R. at 78–80; (*see*

*also* D.I. 235 at 131–32, D.I. 252 at 41–42, 160–62, 234–35).

The Bankruptcy Court did not err in concluding that Rauenhorst, Burton, and Campa did

not breach their fiduciary duties to Opus East.

## C. Piercing the Corporate Veil

The Trustee argues that the Bankruptcy Court erred in refusing to pierce the corporate

veil to hold the Trusts liable for Opus East's debts. (C.A. No. 15-346 D.I. 15 at 33). An entity's

corporate veil may be pierced if: (1) "the corporation and its shareholders operated as a single

economic entity, and (2) . . . an overall element of injustice or unfairness is present." *Trevino v.*

*Merscorp, Inc.,* 583 F. Supp. 2d 521, 528 (D. Del. Sept. 30, 2008). The Trustee argues, first, that

the Bankruptcy Court abused its discretion in excluding the expert testimony of Shepherd Pryor.

(C.A. No. 15-346 D.I. 15 at 33–35). The Trustee argues, second, that the Bankruptcy Court

clearly erred in refusing to pierce the corporate veil because, even without Pryor's testimony, the

evidence clearly established that the Trusts and Opus East operated as a single economic unit and

that injustice and unfairness resulted. (*Id.* at 35–44).

Appellees argue that the Bankruptcy Court correctly found that the evidence did not

establish that Opus East, Opus, LLC, and the Trusts operated as a single economic entity. (C.A.

No. 15-346 D.I. 16 at 32). Appellees also argue that the Bankruptcy Court correctly found that

there was no injustice or unfairness because Opus East existed for the legitimate business

14

purpose of developing and selling real estate. (*Id.* at 35). Appellees note that the Trustee did not

present testimony from any creditor claiming to have been defrauded or misled by Opus East.

(*Id.* at 34).

> The Bankruptcy Court did not abuse its discretion in excluding Pryor's testimony.

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:  (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Exclusion of expert testimony as unreliable pursuant to Rule 702 is reviewed

for abuse of discretion on appeal. *General Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997).

The Trustee offered Pryor's opinion regarding whether Opus East functioned as the "alter ego"

of the Trusts. (C.A. No. 15-346 D.I. 15 at 34).  The Bankruptcy Court excluded Pryor's

testimony because Pryor admitted that he based his opinion only on his personal experience, did

rely on any particular authority or methodology, and had no personal experience with limited

liability companies. *In re Opus East, LLC*, 528 B.R. at 59.  The Bankruptcy Court's considered

conclusion, taking into account the factors relevant under Rule 702, was not an abuse of

discretion.  Even if the Court had abused its discretion in excluding Pryor's testimony, that error

would have been harmless because the Court, as factfinder, heard Pryor's testimony and

disregarded it. *See* 28 U.S.C. § 2111.

Additionally, the Bankruptcy Court did not clearly err in concluding that Opus East did

not operate as a single economic entity with Opus, LLC and the Trusts. *See In re Opus East,

LLC*, 528 B.R. at 60–66.  There was more than sufficient evidence to establish that Opus East,

Opus, LLC and the Trusts operated in a decentralized fashion. (*See* DX 2081 at 1–111; D.I. 233

at 174–76; D.I. 234 at 128–32, 190–91; D.I. 235 at 116–18; D.I. 252 at 189, 214; D.I. 255 at 225). The Bankruptcy Court also did not clearly err in concluding that Opus East existed and was used for a legitimate business purpose—to develop real estate—and not as part of what the Trustee calls a "corporate shell game in order to shuttle assets between companies so as to avoid creditors." (C.A. No. 15-346 D.I. 17 at 21); *In re Opus East, LLC*, 528 B.R. at 60; *see also Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 270 (D. Del. 1989).

Thus, I conclude that the Bankruptcy Court did not err in refusing to pierce the corporate veil.

**D. Unjust Enrichment**

The Trustee argues that the Court erred in concluding that the Trusts, Opus Corp., Rauenhorst, Bednarowski, and Campa were not unjustly enriched. (C.A. No. 15-346 D.I. 15 at 56). The Trustee maintains that these "defendants knowingly obtained benefits from the systematic dismantling of Opus East, under circumstances that make retention of the benefit inequitable." (*Id.*). The Trustee does not object to the legal standard applied by the Bankruptcy Court. (C.A. No. 15-346 D.I. 15 at 56; C.A. No. 15-346 D.I. 17 at 30). In arguing that the Bankruptcy Court committed clear factual error, the Trustee does not point to any specific error in the Bankruptcy Court's thoroughly explained factual findings. (C.A. No. 15-346 D.I. 15 at 56; C.A. No. 15-346 D.I. 17 at 30). I am therefore unpersuaded that that there is reason to vacate or reverse the Bankruptcy Court's rejection of each of the Trustee's unjust enrichment counts. *See Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997) (holding that conclusory arguments without specific citation to the record are deemed waived on appeal).

## IV. CONCLUSION

For the reasons stated above, the judgment of the Bankruptcy Court is affirmed.  An appropriate Order will follow.

17